Leland H. LIMBAUGH, Jr., Appellant,

v.

Maria LIMBAUGH, Appellee.

No. 10–00–017–CV.

Court of Appeals of Texas,
Waco.

Feb. 6, 2002.

**4**

J. Dwight Carmichael, McGregor, McGregor & Carmichael, P.C., Hillsboro, for appellant.

Stephen N. Smith, Martin, Showers, Smith & McDonald, L.L.P., Hillsboro, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

Leland Limbaugh appeals a divorce decree dissolving the marriage between Maria Limbaugh and himself. He claims in four issues that: (1) the court erred by refusing to file additional findings of fact and conclusions of law; (2) the court abused its discretion by requiring spousal maintenance payments; (3) the portion of the decree requiring him to pay money directly to Maria if his military retirement benefits are reduced is void as contrary to federal law and as permanent alimony; and (4) the portion of the decree requiring him to maintain a survivor benefit annuity for Maria improperly requires "a permanent, and for a period of time double, monthly maintenance payment."

## BACKGROUND

According to the testimony, Maria was born in Spain. Maria's mother took her out of school after the third grade. She

has a limited command of the English language. She married Leland in December 1974 when he was stationed with the Navy at Rota, Spain. She was nineteen when they married. They moved to South Carolina in 1977. She got a job in 1978 at a Christmas decoration factory. The factory terminated her employment seven months later when she was expecting the Limbaughs' second child. Since then, Maria has cleaned houses as her primary occupation. The Limbaughs apparently moved to Texas after Leland retired from the Navy in 1993.

Maria filed for divorce after she discovered that Leland was having an affair. Her petition alleges adultery and cruel treatment as grounds for divorce. *See* TEX. FAM.CODE ANN. §§ 6.002, 6.003 (Vernon 1998). Leland does not challenge the court's findings that he committed adultery and cruelly treated Maria. The Limbaughs have two adult children and one sixteen-year-old daughter. Leland does not contest those portions of the court's decree designating Maria as their daughter's sole managing conservator and ordering him to pay child support.

From the reporter's record, we conclude that the primary points of contention at trial were:

- the value of the marital residence;
- to whom the court should award an unimproved tract of twenty acres;
- whether Maria was entitled to a spousal maintenance award;
- whether a 1992 Jeep Cherokee driven by Maria was her separate property or a community asset;
- how much income Leland's farrier business generates; and
- whether the court should include Leland's monthly payments for Maria's survivor benefit annuity within his "disposable" naval retirement pay-

ments, which are subject to division by a divorce court.

We discuss the evidence and the court's findings and decree in more detail hereinafter insofar as they relate to the issues presented.

## ADDITIONAL FINDINGS AND CONCLUSIONS

Leland argues in his first issue that the court erred by failing to make additional findings of fact and conclusions of law. Maria responds that no additional findings or conclusions were necessary because the issues on which Leland sought additional findings and conclusions were not "ultimate or controlling issues."

After the court signed the decree, Leland timely filed a request for findings of fact and conclusions of law. *See* TEX.R. CIV. P. 296. He filed a notice of past due findings and conclusions when the court failed to file any findings within twenty days after his request. *Id.* 297. The court filed its findings and conclusions eleven days later. Leland then timely file a motion requesting additional findings and conclusions. *Id.* 298. The court denied Leland's request for additional findings and conclusions by written order.

### PERTINENT AUTHORITIES

Rule of Civil Procedure 296 provides in pertinent part, "In any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law." *Id.* 296. If a party deems the court's findings and conclusions deficient in some respect, he may request "specified additional or amended findings or conclusions." *Id.* 298.

A court need not make findings of fact on undisputed matters. *See SMI/ USA, Inc. v. Profile Techs., Inc.*, 38 S.W.3d 205, 209 (Tex.App.-Waco 2001, no

pet.); *International Ins. Agency, Inc. v. Railroad Comm'n*, 893 S.W.2d 204, 211 (Tex.App.-Austin 1995, writ denied); *Howard P. Foley Co. v. Cox*, 679 S.W.2d 58, 64 (Tex.App.-Houston [14th Dist.] 1984, no writ). Rather, a court must make findings of fact and conclusions of law "on each material issue raised by the pleadings and evidence." *Roberts v. Roberts*, 999 S.W.2d 424, 434 (Tex.App.-El Paso 1999, no pet.); *accord Humble v. Humble*, 805 S.W.2d 558, 563 (Tex.App.-Beaumont 1991, writ denied); *Chislum v. Home Owners Funding Corp.*, 803 S.W.2d 800, 805 (Tex.App.-Corpus Christi 1991, writ denied); *Lettieri v. Lettieri*, 654 S.W.2d 554, 556 (Tex.App.-Fort Worth 1983, writ dism'd).

■ Stated another way, when a proper request is made, the court must make findings and conclusions on the ultimate or controlling issues but not on evidentiary issues. *See Roberts*, 999 S.W.2d at 434; *Hill v. Hill*, 971 S.W.2d 153, 155 (Tex.App.-Amarillo 1998, no pet.); *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 838 (Tex.App.-Texarkana 1996, writ denied); *Rafferty v. Finstad*, 903 S.W.2d 374, 376 (Tex.App.-Houston [1st Dist.] 1995, writ denied); *Fanning v. Fanning*, 828 S.W.2d 135, 152 (Tex.App.-Waco 1992), *rev'd on other grounds*, 847 S.W.2d 225 (Tex.1993) (per curiam); *Humble*, 805 S.W.2d at 563; *Lettieri*, 654 S.W.2d at 556; *see also Levine v. Maverick County Water Control & Improvement Dist.*, 884 S.W.2d 790, 796 (Tex.App.-San Antonio 1994, writ denied); *Associated Tel. Directory Publishers, Inc. v. Five D's Pub'g Co.*, 849 S.W.2d 894, 901 (Tex.App.-Austin 1993, no writ).

The distinction between an ultimate or controlling issue and an evidentiary issue has been defined in the following manner:

An ultimate fact issue is one that is essential to the right of action. *Wichita Falls & Oklahoma Ry. Co. v. Pepper*, 134 Tex. 360, 371, 135 S.W.2d 79, 84 (1940). Such an issue seeks a fact that would have a direct effect upon the judgment. *Amoco Prod. Co. v. Thompson*, 657 S.W.2d 824, 829 (Tex.App.-Corpus Christi), *rev'd on other grounds sub nom. Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951 (Tex.1983). In contrast, an evidentiary issue is one that the jury may consider in deciding the controlling issue, but that is not a controlling issue itself. *Sell v. C.B. Smith Volkswagen, Inc.*, 611 S.W.2d 897, 903 (Tex.Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.).

*Clear Lake City Water Auth. v. Winograd*, 695 S.W.2d 632, 639 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.); *accord In re Marriage of Morris*, 12 S.W.3d 877, 886 (Tex.App.-Texarkana 2000, no pet.); *Daves v. Commission for Lawyer Discipline*, 952 S.W.2d 573, 578 (Tex.App.-Amarillo 1997, pet. denied); *Finch v. Finch*, 825 S.W.2d 218, 221 (Tex.App.-Houston [1st Dist.] 1992, no writ); *Tamez v. Tamez*, 822 S.W.2d 688, 693 (Tex.App.-Corpus Christi 1991, writ denied).

■ A court's conclusions of law need not "set out in minute detail every reason or theory by which it arrived at its final conclusion." *Chislum*, 803 S.W.2d at 806; *accord Associated Tel. Directory Publishers*, 849 S.W.2d at 901; *Lettieri*, 654 S.W.2d at 556; *Stephenson v. Vineyard*, 564 S.W.2d 424, 425 (Tex.Civ.App.-Houston [1st Dist.] 1978, writ ref'd n.r.e.). Thus, in a straightforward case in which there are not multiple grounds for recovery or defense, the court need not set out the reasoning behind its judgment in any detail.[1] *See Sheldon Pollack Corp. v. Pio-*

---

1. In fact, the writers of one recognized treatise have determined that "[c]onclusions of law are not very important on appeal." 6 Roy

*neer Concrete of Tex., Inc.,* 765 S.W.2d 843, 845 (Tex.App.-Dallas 1989, writ denied); *Fraser v. Goldberg,* 552 S.W.2d 592, 594 (Tex.Civ.App.-Beaumont 1977, writ ref'd n.r.e.).

However, the converse is likewise true. *See Sheldon Pollack,* 765 S.W.2d at 845; *Joseph v. Joseph,* 731 S.W.2d 597, 598 (Tex.App.-Houston [14th Dist.] 1987, no writ); *Fraser,* 552 S.W.2d at 594. "In factually complicated situations in which there are two or more possible grounds for recovery or defense, an undue burden would be placed upon an appellant. Having to try to guess the reason or reasons the trial judge ruled against him should not be required." *Fraser,* 552 S.W.2d at 594; *accord Beard v. Beard,* 49 S.W.3d 40, 52 (Tex.App.-Waco 2001, pet. filed); *Roberts,* 999 S.W.2d at 437; *Sheldon Pollack,* 765 S.W.2d at 845; *Joseph,* 731 S.W.2d at 598. Thus, a court must file more detailed conclusions of law in such a case.

From these authorities, we distill several principles:

- findings of fact are required when "material" factual disputes exist;

- factual disputes are "material" when they impact ultimate or controlling issues, which are those issues that have a direct effect on the judgment; and

- detailed conclusions of law are required only in complicated cases involving multiple grounds of recovery or defense.

In the divorce context, the First Court of Appeals has said the following regarding findings of fact:

In a case of property division, the ultimate and controlling issue is whether the trial court divided the property in a "just and right manner" pursuant to [what is now section 7.001 of the Family Code]. This Court has repeatedly held that the value of specific property is not an ultimate issue, and therefore need not be set out in findings of fact.

*Rafferty,* 903 S.W.2d at 376 (citations omitted). Several other courts have followed this line of reasoning in divorce cases.[2] *See, e.g., Hill,* 971 S.W.2d at 155; *Fanning,* 828 S.W.2d at 152; *Humble,* 805 S.W.2d at 563.

Our research has disclosed three divorce cases in which findings were required in an appeal from a bench trial. *See Morris,* 12 S.W.3d at 886; *Roberts,* 999 S.W.2d at 435; *Joseph,* 731 S.W.2d at 598; *see also Tenery v. Tenery,* 932 S.W.2d 29, 30 (Tex.1996) (requiring findings under section 154.130 of Family Code when child support award varied from statutory guidelines); *Rothwell v. Rothwell,* 775 S.W.2d 888, 889–90 (Tex.App.-El Paso 1989, no writ) (requiring findings when court's 50–50 division of husband's military retirement varied from jury's recommendation that it be divided 30–70).

In *Morris,* the trial court awarded the wife a cash payment of $180,000 as a part of the division of the community estate. The husband requested findings on the values the court assigned to each of the community assets in dividing the marital estate. The Texarkana Court of Appeals concluded that the requested findings under the facts of that case concerned controlling issues because

---

W. MCDONALD & ELAINE GRAFTON CARLSON, TEXAS CIVIL PRACTICE § 18:3[a] (2d ed.1998).

2. Effective September 1, 2001 however, a trial court must, on proper request, make findings of fact and conclusions of law when it renders a divorce decree dividing the marital

estate. *See* TEX. FAM.CODE. ANN. § 6.711 (Vernon Supp.2002). These findings and conclusions must characterize and value each asset or liability on which disputed evidence has been presented. *Id.*

without them neither the appellant nor the court could determine whether the sum awarded represented half the value of a particular community asset or constituted reimbursement for the wife's efforts in enhancing the value of the husband's separate property. *See Morris*, 12 S.W.3d at 886.

The El Paso Court of Appeals has made a more broad statement regarding the necessity of findings in this type of case. In sum, that court held:

> Because we believe that an appellant cannot demonstrate that a trial court abused its discretion in making a just and right division of the community estate without being able to quantify the size of the community pie or just how large a slice each spouse was served, we conclude that an appellant is entitled to findings on characterization and valuation when error is preserved.

*Roberts*, 999 S.W.2d at 435.

In reaching this conclusion, the court noted that characterization and valuation issues are often submitted to a jury in a divorce case and the jury's findings are binding on the court. *Id.* at 434 & n. 10 (citing *Cockerham v. Cockerham*, 527 S.W.2d 162, 173 (Tex.1975); *Archambault v. Archambault*, 763 S.W.2d 50, 51 (Tex. App.-Beaumont 1988, no writ)). The court opined, "[A]ny question that can properly be submitted to a jury should be worthy of a finding by the judge in a bench trial." *Id.* at 434. The court cited a hypothetical situation in which a wife values a particular asset at $250,000 while the husband values it at $50,000 and concluded that it would be "difficult if not impossible to determine" whether the court abused its discretion in effecting a just and right

division of the community estate under such facts without findings. *Id.*

In *Joseph*, the Fourteenth Court of Appeals had before it a factual scenario virtually identical to the hypothetical setting cited by the El Paso court in *Roberts*. The parties in *Joseph* proffered competing appraisal methods for assigning values to the three properties at issue. The court noted that one of these properties would have a value of $246,000 under one method but $40,000 under another. The court concluded that the appellant was harmed by the court's failure to make requested findings because he could not ascertain from the judgment which appraisal method the court used or what value the court assigned to the properties at issue. Thus, the court's failure to make the requested findings harmed the appellant because it required him "to guess the reason or reasons" for the court's rulings. *See Joseph*, 731 S.W.2d at 598; *see also Beard*, 49 S.W.3d at 52 (citing *Chandler v. Chandler*, 991 S.W.2d 367, 389 (Tex.App.-El Paso 1999, pet. denied); *Sheldon Pollack*, 765 S.W.2d at 845); Tex.R.App. P. 44.1(a)(2).

In our view, the factual scenarios presented in *Morris* and *Joseph* involved material factual disputes which had a direct effect on the judgments. Those appeals also involved multiple legal theories on which the judgments could have been based.

The situation presented in *Roberts* concerned a number of unusual procedural issues which no doubt justified the court's conclusion that findings were required. There, the trial judge was defeated in the general election and her successor took office before a decree was signed.[3] The

---

3. The trial judge filed a "report" near the end of her term which followed the jury's verdict and set out what she believed the decree should provide. She directed the parties to prepare a judgment in accordance with her report. Her successor signed a decree which the parties had prepared at the trial judge's request.

decree did not characterize the parties' marital residence as community or separate property.[4] Instead, the court ordered that it be sold and the proceeds divided in a particular manner (not evenly). The successor judge refused to file findings of fact because he had not heard the evidence. Nevertheless, the appellate court abated the matter and directed the judge to prepare findings and conclusions.

Shortly before the court's findings and conclusions were due, the husband died. The appellate court extended the deadline for the findings and conclusions. However, because the successor judge did not hear the evidence and because the parties refused to submit proposed findings, the judge was unable to file the requested findings. In addition, the husband failed to request a statement of facts.[5]

Under the unusual facts presented, the court concluded that findings were required.

> Where the appellant has attempted to obtain formal findings, where he has stated without contradiction that both parties claimed the real estate as separate property, where the deed gives rise to a rebuttable presumption that a gift was intended, where the verdict of the jury reflects that they rejected Wife's efforts to rebut that presumption, where the trial judge who heard the evidence did not explicitly characterize the asset as either community or separate property but did not list it among the enumer-

ated community assets, where that same trial judge effectuated the sale of the property which would be consistent with a finding that the parties' separate estates owned the property as tenants in common, and where the decree is the sole reference to ownership by the community estate, we are hard pressed to declare that the record affirmatively establishes Husband has suffered no injury as a result of his inability to obtain findings of fact as to characterization.

*Roberts*, 999 S.W.2d at 441.

Because the court had previously abated for findings and conclusions which the successor judge was unable to make, the court concluded that its "only recourse [wa]s to reverse and remand." *Id.* at 442. Under the principles noted above, it appears that findings were necessary in *Roberts* because the court's characterization and valuation of the residence impacted the final judgment and because multiple grounds of recovery were presented.[6]

### APPLICATION

At the outset, we distinguish the Limbaughs' case from *Roberts* because we have the reporter's record and because Maria offered in evidence Leland's and her own inventories and appraisements of their property. *Cf. Roberts*, 999 S.W.2d at 430, 441 n. 16. Leland asked the court to make specific findings on: the value of each of the assets in the parties' community estate; the amount owed on each community debt; the value of each of the parties'

---

4. Apparently, the wife conveyed "one-half (1/2) of her . . . interest in the [residence]" to her husband during the marriage. She contended at trial that she signed this deed under duress. The jury found against her on this issue.

5. *See* Tex.R.App. P. 53(k), 707–708 S.W.2d (Tex.Cases) lxvii (Tex.1986, amended 1997).

6. Some of the language used by the court in *Roberts* suggests "that an appellant [in a di-

vorce case] is entitled to findings on characterization and valuation" whenever he properly requests them. *Roberts v. Roberts*, 999 S.W.2d 424, 435 (Tex.App.-El Paso 1999, no pet.). We do not agree with this broadly-stated proposition under the law as it existed prior to the recent enactment of section 6.711 of the Family Code. *See* Tex. Fam.Code. Ann. § 6.711.

separate property assets; the percentage of community property awarded to each party and the reasons therefor; the reasons for the court's attorney's fee award; the basis for the court's requirement that Leland designate Maria as former spouse beneficiary under a military survivor benefit plan; and the reasons for the court's award of spousal maintenance to Maria.

## Community Assets

■ Before trial, the parties prepared a written stipulation regarding most of the larger community assets and debts. The notable exceptions are the residence and the Jeep Cherokee (which the parties did not agree was community property). A review of the testimony and the parties' inventories reflect significant disputes on few of the remaining community assets.

The primary dispute concerned the value of the marital residence.[7] Maria offered testimony that it has a present value of $49,500. Leland's expert testified that the house is worth $63,700. The Limbaughs differed by $1200 in their valuations of their household appliances. They varied by about $350 in their valuations of various items of personalty awarded to Leland.[8] They differed by $9000 in their valuations of the Jeep Cherokee awarded to Maria.

According to our review of Leland's figures, the total value of the community assets was $170,768. Maria valued the community assets at $145,800.[9] Applying Leland's valuations, he received $77,147 (45%) of the community assets while Maria received $93,620 (55%). According to Maria's valuations, Leland received $76,811 (53%) of the community estate, and she received $68,989 (47%).

Although the parties differed by approximately $25,000 in their valuation of the community estate, our review of the record convinces us that these differences are not material. The court's findings regarding the characterization of the parties' assets are clear. The $25,000 variance between Leland's and Maria's valuations does not come close to the variance which existed in *Joseph* or the hypothetical variance discussed in *Roberts*. Nor does this case involve the procedural and factual irregularities presented in *Roberts*. Instead, it appears that the court divided the community estate roughly equally between the parties. Accordingly, we conclude that the court committed no error in refusing to make additional findings regarding the valuation of the community assets.

## Community Debts

■ The parties stipulated to the amount of all but two of their debts. Leland did not dispute Maria's figures regarding those two debts (Citibank and Discover). Accordingly, we conclude that the court committed no error in refusing to make additional findings regarding the

---

7. We do not mention those assets of which the parties' assigned values differed by less than $100.

8. Those items in dispute are a marble table, a gun cabinet, a set of weights, and the television. Leland's inventory characterizes some of the household items which the court awarded him as separate property and assigns no value to them. However, he did not dispute the values Maria assigned to these items, and he does not challenge the court's finding that these items were community property.

9. In some of the discrepancies noted, Maria assigned a higher value than Leland. In others, Leland assigned the higher value. Thus, the difference between these totals does not equate with the sum of the differences noted. We include with both parties' calculations the values assigned to certain assets by one party which the other did not list in an inventory and did not dispute.

amount of the community debts. *See SMI/USA,* 38 S.W.3d at 209; *International Ins. Agency,* 893 S.W.2d at 211; *Howard P. Foley Co.,* 679 S.W.2d at 64.

### Separate Property

■ The parties offered no evidence regarding the value of their separate property with the exception of Leland's horse. Maria did not dispute the value Leland assigned to his horse. Thus, we conclude that the court committed no error in refusing to make additional findings regarding the value of the parties' separate property assets. *Id.*

### Percentage of Community Estate Awarded

■ According to our review of the record, the trial court divided the community estate roughly equally between the parties. The percentage of the community estate which a court chooses to award to each of the parties in a divorce is not a factual issue. Rather, it is a legal conclusion which the court reaches based on the facts presented. This is a fairly straightforward case with no material factual disputes. Thus, we conclude that the court committed no error by refusing to make additional conclusions "set[ting] out in minute detail every reason or theory by which it arrived at its final conclusion." *Chislum,* 803 S.W.2d at 806; *accord Associated Tel. Directory Publishers,* 849 S.W.2d at 901; *Lettieri,* 654 S.W.2d at 556; *Stephenson,* 564 S.W.2d at 425.[10]

### Attorney's Fees

■ In Maria's petition, she requested attorney's fees as a part of the court's division of the community estate. *See Murff v. Murff,* 615 S.W.2d 696, 699 (Tex. 1981); *Beard,* 49 S.W.3d at 64; *Pletcher v.*

*Goetz,* 9 S.W.3d 442, 448 (Tex.App.-Fort Worth 1999, pet. denied). She did not seek attorney's fees under section 106.002 of the Family Code. *See* TEX. FAM.CODE ANN. § 106.002 (Vernon Supp.2002). Because Maria asserted only one legal basis for the recovery of attorney's fees, we conclude that the court committed no error by refusing to make additional findings or conclusions specifying the legal basis for its attorney's fee award. *See Chislum,* 803 S.W.2d at 806; *Associated Tel. Directory Publishers,* 849 S.W.2d at 901; *Lettieri,* 654 S.W.2d at 556; *Stephenson,* 564 S.W.2d at 425.

### Former Spouse Beneficiary Designation

■ Section 7.003 of the Family Code requires a divorce court to determine the rights of both spouses in any community-held annuity. *See* TEX. FAM.CODE ANN. § 7.003 (Vernon 1998). Before the divorce, Leland had elected to establish a survivor benefit annuity for Maria so she could continue to receive his Navy retirement payments if he predeceased her. *See* 10 U.S.C.A. §§ 1447–1455 (West 1998 & Supp.2001). The court found that this election should be continued following the divorce and decreed that Leland designate Maria as his former spouse beneficiary to accomplish this objective. *Id.* § 1450(f)(4) (West 1998); *Schneider v. Schneider,* 5 S.W.3d 925, 927–28 (Tex.App.-Austin 1999, no pet.); *Morris v. Morris,* 894 S.W.2d 859, 864–65 (Tex.App.-Fort Worth 1995, no writ). Title 10, section 1450(f)(4) of the United States Code provides the only basis on which a divorce court can order such a designation. Accordingly, we conclude that the court committed no error by refusing to make additional findings or conclusions

---

**10.** Given the court's findings that Leland committed adultery and cruelly treated Maria,

we could conceivably reach a different conclusion were Maria attacking the judgment.

specifying the legal basis for that portion of its decree requiring Leland to designate Maria as his former spouse beneficiary. *See Chislum,* 803 S.W.2d at 806; *Associated Tel. Directory Publishers,* 849 S.W.2d at 901; *Lettieri,* 654 S.W.2d at 556; *Stephenson,* 564 S.W.2d at 425.

### Spousal Maintenance Award

■ Section 8.002(2)(C) of the Family Code authorizes a divorce court to order spousal maintenance payments when the duration of the marriage is ten years or more if the recipient spouse "lacks sufficient property, including property distributed to the spouse under this code, to provide for the spouse's minimum reasonable needs" and "clearly lacks earning ability in the labor market adequate to provide support for the spouse's minimum reasonable needs." TEX. FAM.CODE ANN. § 8.002(2)(C) (Vernon 1998). The court specifically found that the Limbaughs' marriage lasted "ten years or more," that Maria "lacks sufficient property to provide for her minimum reasonable needs," and that she "clearly lacks earning ability in the labor market adequate to provide support for her minimum reasonable needs." These are the only findings necessary to support a spousal maintenance award. *See id.* Accordingly, we conclude that the court committed no error by refusing to make additional findings or conclusions regarding the spousal maintenance award. *See Chislum,* 803 S.W.2d at 806; *Associated Tel. Directory Publishers,* 849 S.W.2d at 901; *Lettieri,* 654 S.W.2d at 556; *Stephenson,* 564 S.W.2d at 425.

For these reasons, Leland's first issue is without merit.

### SPOUSAL MAINTENANCE

Leland contends in his second issue that the court abused its discretion by ordering him to make spousal maintenance payments to Maria because she was awarded sufficient property to provide for her minimum reasonable needs and has sufficient earning ability to meet those needs.

### PERTINENT AUTHORITIES

■ We review a spousal maintenance order under an abuse-of-discretion standard. *See Alexander v. Alexander,* 982 S.W.2d 116, 119 (Tex.App.-Houston [1st Dist.] 1998, no pet.); *In re Marriage of Hale,* 975 S.W.2d 694, 697 (Tex.App.-Texarkana 1998, no pet.); *DuBois v. DuBois,* 956 S.W.2d 607, 612 (Tex.App.-Tyler 1997, no pet.). Thus, we will not disturb such an order unless the court "acted without reference to guiding rules or principles such that the court's [order] was arbitrary and unreasonable." *Walston v. Walston,* 971 S.W.2d 687, 691 (Tex.App.-Waco 1998, pet. denied); *accord Hale,* 975 S.W.2d at 697.

Section 8.002 of the Family Code permits a divorce court to order maintenance payments in limited circumstances. *See* TEX. FAM.CODE ANN. § 8.002 (Vernon 1998). Pertinent to this case, section 8.002(2)(C) allows for maintenance payments if:

> (2) the duration of the marriage was 10 years or longer, the spouse seeking maintenance lacks sufficient property, including property distributed to the spouse under this code, to provide for the spouse's minimum reasonable needs, as limited by Section 8.005, and the spouse seeking maintenance:
>
> . . . .
>
> (C) clearly lacks earning ability in the labor market adequate to provide support for the spouse's minimum reasonable needs, as limited by Section 8.005.

*Id.* § 8.002(2)(C).

Once a court determines that a spouse is eligible for maintenance payments, section

8.003 provides a non-exhaustive list of factors the court may consider in determining "the nature, amount, duration, and manner of periodic payments." *See* TEX. FAM.CODE ANN. § 8.003 (Vernon 1998). The statutory factors include:

(1) the financial resources of the spouse seeking maintenance, including the community and separate property and liabilities apportioned to that spouse in the dissolution proceeding, and that spouse's ability to meet the spouse's needs independently;

(2) the education and employment skills of the spouses, the time necessary to acquire sufficient education or training to enable the spouse seeking maintenance to find appropriate employment, the availability of that education or training, and the feasibility of that education or training;

(3) the duration of the marriage;

(4) the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance;

(5) the ability of the spouse from whom maintenance is requested to meet that spouse's personal needs and to provide periodic child support payments, if applicable, while meeting the personal needs of the spouse seeking maintenance;

(6) acts by either spouse resulting in excessive or abnormal expenditures or destruction, concealment, or fraudulent disposition of community property, joint tenancy, or other property held in common;

(7) the comparative financial resources of the spouses, including medical, retirement, insurance, or other benefits, and the separate property of each spouse;

(8) the contribution by one spouse to the education, training, or increased earning power of the other spouse;

(9) the property brought to the marriage by either spouse;

(10) the contribution of a spouse as homemaker;

(11) marital misconduct of the spouse seeking maintenance; and

(12) the efforts of the spouse seeking maintenance to pursue available employment counseling as provided by Chapter 304, Labor Code.

*Id.*

The Legislature also provided a statutory presumption against spousal maintenance "unless the spouse seeking maintenance has exercised diligence in:

(1) seeking suitable employment; or

(2) developing the necessary skills to become self-supporting during a period of separation and during the time the suit for dissolution of the marriage is pending."

*Id.* § 8.004(a) (Vernon 1998).

### APPLICATION

■ We begin with the presumption against spousal maintenance. The court found that Maria exercised diligence in seeking suitable employment and in developing necessary skills to become self-sufficient after the parties separated and during the pendency of the divorce suit. Leland does not challenge these findings. In view of these unchallenged findings, the court did not abuse its discretion by deciding that the presumption against maintenance was overcome by Maria's efforts in this regard. *See Wilson v. Texas Parks & Wildlife Dep't*, 853 S.W.2d 825, 832 (Tex.App.-Austin 1993), *rev'd on other grounds*, 886 S.W.2d 259 (Tex.1994); *Lawson v. Lawson*, 828 S.W.2d 158, 160 (Tex.App.-Texarkana 1992, writ denied).

To be eligible for maintenance payments, a spouse must establish:

- the parties were married for ten or more years;
- she lacks sufficient resources, including property awarded under the divorce decree, to provide for her minimum reasonable needs; and
- she "clearly lacks earning ability in the labor market adequate to provide support for the spouse's minimum reasonable needs."

*Id.* § 8.002(2)(C).

■ Leland challenges the court's affirmative findings on the latter two of these elements. If the record contains some evidence supporting these findings, no abuse of discretion is shown. *See Hale,* 975 S.W.2d at 697; *accord Alexander,* 982 S.W.2d at 119; *DuBois,* 956 S.W.2d at 612; *see also In re Barber,* 982 S.W.2d 364, 366 (Tex.1998) ("A trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision."); *Wilemon v. Wilemon,* 930 S.W.2d 290, 294 (Tex.App.-Waco 1996, no writ) ("When there is some evidence of a substantive and probative character to support the trial court's decision, no abuse of discretion occurs.").

■ Maria presented a financial information sheet which provides a general listing of her monthly income and expenses. She indicates that her monthly expenses are $2,326. This listing includes two credit cards which Leland was ordered to pay. When we remove the $200 per month Ma-

ria attributed to the credit card debts charged to Leland in the decree, Maria's evidence shows monthly expenditures of $2,126.

Conversely, she lists net monthly income of $668 per month. Excluding the maintenance payment, Maria also receives the following monthly payments under the decree: $672 in child support; and $530 in Navy retirement benefits.[11] Maria's combined income under the decree and from her own employment totals $1,870. Thus, her monthly income is about $250 less than her monthly expenses.

■ Leland argues that Maria seeks more than is necessary to meet her "minimum reasonable needs." He compares the $2,126 in monthly expenses she claims to the amounts shown in other maintenance cases. However, "[t]he term 'minimum reasonable needs' is not defined by statute, and there appear to be no cases defining the term. Deciding what the minimum reasonable need is for a particular individual or family is a fact-specific determination that ordinarily should be made by the trial court." *Hale,* 975 S.W.2d at 698. Although Leland suggests in his brief that Maria overstated some of her monthly expenditures, he produced no evidence that her actual expenditures are less than indicated. Accordingly, we conclude that the record contains probative evidence that $2,126 is the amount necessary to meet Maria's "minimum reasonable needs" on a monthly basis.

11. Leland theorizes that Maria's share of his Navy retirement payments equals $576. To reach this sum, he includes his court-ordered monthly payment of $117.43 for the survivor benefit annuity as part of his monthly Navy retirement payments of which the court awarded Maria 39%. However, he argued at trial that the annuity payment should not be included in the amount used to calculate Maria's share of these payments. As he notes in connection with his fourth issue, such an annuity payment is statutorily excluded from "disposable retired pay" subject to division by a divorce court. *See* 10 U.S.C.A. § 1408(a)(4)(D), (c)(1) (West 1998). Accordingly, the Navy retirement payments divisible by the court did not include the monthly annuity payment.

■ We now determine whether Maria received sufficient assets under the decree to meet these expenditures. The only assets of significance Maria received were the residence and the Jeep Cherokee. The residence does have some equity, and the Jeep is unencumbered. However, we decline to read into section 8.002(2) a requirement that a spouse acquire additional debts to meet her monthly expenses. Accordingly, we conclude that the record contains some probative evidence that Maria did not receive sufficient assets under the decree to provide for her minimum reasonable needs.

■ Leland further contends that Maria could obtain additional employment sufficient to meet her needs. Maria derives her employment income from cleaning houses. She testified that she cleans five houses every two weeks, which requires about forty hours of her time. Leland's counsel asked her on cross-examination whether her schedule would permit her to clean twice as many houses. She responded:

A: But I never have anybody else. That is all I have right now.

Q: But you could, couldn't you, as far as time goes?

A: Yes, I can, but I don't have that.

Leland construes this testimony as Maria expressing an unwillingness to find additional houses to clean. However, her testimony could also be construed as a statement that she has been unable to locate additional houses to clean.

From this testimony, the court could have concluded that Maria was unable to find additional houses to clean. Thus, the record contains some probative evidence that Maria "clearly lacks earning ability in the labor market adequate to provide support for [her] minimum reasonable needs." Tex. Fam.Code Ann. § 8.002(2)(C).

Because the record contains some probative evidence to support the court's spousal maintenance award, we conclude that Leland's second issue is without merit.

### SURVIVOR BENEFIT ANNUITY

■ Leland avers in his third issue that the court abused its discretion by ordering him to make a monthly payment to maintain a survivor benefit annuity for Maria because such order improperly requires "a permanent, and for a period of time double, monthly maintenance payment."

The federal statutes pertinent to military retirement benefits allow a service member to purchase a separate annuity to provide a survivorship benefit for his spouse or dependent children. *See* 10 U.S.C.A. § 1448 (West 1998 & Supp.2000). Leland purchased such an annuity during the marriage for the benefit of Maria and their minor daughter. Under the inception of title rule, the annuity was a community asset. *See Camp v. Camp*, 972 S.W.2d 906, 908–09 & n. 1 (Tex.App.-Corpus Christi 1998, pet. denied) (ownership of life insurance policy determined under inception-of-title rule).

Title 10, section 1450(f)(4) of the United States Code provides that a divorce court "may require a person to elect . . . under section 1448(b) . . . to provide an annuity to a former spouse." 10 U.S.C.A. § 1450(f)(4). The court did so in the Limbaugh decree. The court also ordered Leland to continue making the monthly payments necessary to maintain this annuity. He characterizes this payment requirement as "permanent maintenance."

■ However, a divorce court may order a spouse to make post-decree payments for the benefit of his former spouse for life if such payments "are directly re-

ferable to the rights and equities of the parties in community property at the time of divorce." *Siefkas v. Siefkas,* 902 S.W.2d 72, 75 (Tex.App.-El Paso 1995, no writ); *accord McBean v. McBean,* 371 S.W.2d 930, 932 (Tex.Civ.App.-Waco 1963, no writ) (required monthly post-divorce insurance premium payments do not constitute improper "permanent alimony"); *Bunker v. Bunker,* 338 S.W.2d 770, 770 (Tex.Civ. App.-San Antonio 1960, no writ) (required monthly post-divorce payment of $300 for life in settlement of spouse's "substantial community property rights" not "permanent alimony"). Because the monthly payment for the survivor benefit annuity is "directly referable" to this community asset, we conclude that the court did not abuse its discretion by ordering Leland to continue making this payment. *See id.* Accordingly, Leland's fourth issue is without merit.

## CONTINUITY OF NAVY RETIREMENT

 Leland's third issue challenges that portion of the court's decree which requires him to make direct payments to Maria in the future to offset any decrease in her share of the monthly Navy retirement payments which may occur because of an increase in his disability benefits.

 The court had the authority to divide only the community property share of Leland's Navy retirement. *See Havlen v. McDougall,* 22 S.W.3d 343, 345 (Tex. 2000). When the retirement is fully matured at the time of divorce, Texas courts apply the *Taggart* formula to determine the extent of the community estate's interest. *See Taggart v. Taggart,* 552 S.W.2d 422, 424 (Tex.1977), *modified by Berry v. Berry,* 647 S.W.2d 945, 947 (Tex.1983); *Burchfield v. Finch,* 968 S.W.2d 422, 424– 25 (Tex.App.-Texarkana 1998, pet. denied).[12] The parties agree that seventy-eight percent of Leland's available Navy retirement belongs to the community estate under *Taggart.*

Under federal law, only Leland's "disposable retired pay" can be apportioned by a divorce court. *See* 10 U.S.C.A. § 1408(c)(1) (West 1998); *Mansell v. Mansell,* 490 U.S. 581, 589, 109 S.Ct. 2023, 2029, 104 L.Ed.2d 675, 685 (1989); *Wallace v. Fuller,* 832 S.W.2d 714, 719 (Tex.App.- Austin 1992, no writ); *Gallegos v. Gallegos,* 788 S.W.2d 158, 160 (Tex.App.-San Antonio 1990, no writ). "Disposable retired pay" does not include amounts deducted for payment of a survivor benefit annuity or because of a waiver of retired pay required by a service member's election to receive disability benefits under title 5 or

---

**12.** Under *Taggart,* the community interest in a fully matured retirement plan is calculated by dividing the number of months the parties were married during the employee spouse's employment by the total number of months of service of the employee spouse. *See Taggart v. Taggart,* 552 S.W.2d 422, 424 (Tex.1977); *Burchfield v. Finch,* 968 S.W.2d 422, 424–25 (Tex.App.-Texarkana 1998, pet. denied). The resulting percentage represents the community estate's interest in the retirement benefits. *Berry* applies in those cases where the employee spouse's service will continue after the divorce. In this situation, the community interest is determined as of the time of divorce. *See Berry v. Berry,* 647 S.W.2d 945, 947 (Tex.

1983); *Burchfield,* 968 S.W.2d at 424–25. The *Berry* formula prevents a divorce court from awarding the non-employee spouse any portion of a post-divorce increase in retirement attributable to raises, promotions, services rendered or contributions as such an increase would be the employee spouse's separate property. *See Berry,* 647 S.W.2d at 947; *Burchfield,* 968 S.W.2d at 424. Conversely, a divorce court may award the non-employee spouse her respective share of any post-divorce cost-of-living increase in the retirement benefit. *See Burchfield,* 968 S.W.2d at 424– 25; *Phillips v. Parrish,* 814 S.W.2d 501, 505 (Tex.App.-Houston [1st Dist.] 1991, writ denied).

title 38.[13] 10 U.S.C.A. § 1408(a)(4)(B), (D) (West 1998).

In *Mansell*, the Supreme Court held that a divorce court cannot apportion military retirement pay which has been waived to receive Veterans Administration disability benefits under title 38. *Mansell*, 490 U.S. at 594–95, 109 S.Ct. at 2032, 104 L.Ed.2d at 689. The Court expressly recognized that this holding "may inflict economic harm on many former spouses." *Id.* at 594, 109 S.Ct. at 2032, 104 L.Ed.2d at 689.

Leland's gross retirement pay of $1,783 currently has deductions for title 38 disability benefits ($305) and for the survivor benefit annuity ($117) which result in "disposable retired pay" of $1,361. Seventy-eight percent of the "disposable retired pay" belongs to the community estate, and the court awarded Maria one-half of it (39%).

The court also sought to prevent Leland from unilaterally reducing his "disposable retired pay" in the future by waiving a portion of this pay in exchange for additional VA disability benefits. To accomplish this, the court decreed that, should such reduction occur, Leland pay Maria the difference between the monthly payments she received at the time of the decree and the payments as reduced because of Leland's post-divorce election to receive additional VA disability benefits.

However, "[m]ilitary retirement pay, even after it is a vested right and a part of the community, under federal law, is subject to defeasance. This defeasance may occur through the service person's . . . waiver of the retirement pay [for VA disability benefits]." *Ex parte Burson*, 615 S.W.2d 192, 196 (Tex.1981) (orig. proceeding). The *Burson* court held "that a divorce decree cannot prohibit [a military retiree] from doing that which the federal law properly g[ives] him a right to do." *Id.* The court concluded, "Federal preemption of veterans benefits for disability does not leave room for their defeat, either by implication or indirection." *Id.*

*Burson* presented a fact situation the court in the Limbaughs' case sought to avoid. The divorce court awarded Burson's wife a portion of his Air Force disability retirement pay. *After the divorce,* Burson elected to waive the entirety of his Air Force benefits in exchange for VA disability benefits. The trial court found Burson in contempt for failing to pay his former spouse her share of his Air Force benefits. Burson argued before the Supreme Court that the trial court could not order him to pay any portion of his VA disability benefits. The Court agreed and ordered his discharge from confinement. *Id.*

Under *Burson*, a Texas court cannot expressly or impliedly prohibit a retired service member from unilaterally waiving some or all of his "disposable retired pay" after divorce in exchange for VA disability benefits.[14] *Id.; see also In re Marriage of Reinauer*, 946 S.W.2d 853, 858–59 (Tex. App.-Amarillo 1997, writ denied) (reversing portion of post-divorce order including VA disability pay within military retire-

---

**13.** Title 10, § 1408(a)(4) also excludes from "disposable retired pay" amounts owed by a retiree to the United States for prior overpayments and recoupments and a certain percentage of retired pay received under chapter 61 by a service member who retired from the service because of a physical disability. *See* 10 U.S.C.A. § 1408(a)(4)(A), (C) (West 1998);

*see also id.* §§ 1201–1221 (West 1998 & Supp. 2001) (chapter 61).

**14.** However, a court may consider VA disability benefits in making a just and right division of the marital estate. *See Rothwell v. Rothwell*, 775 S.W.2d 888, 892 (Tex.App.-El Paso 1989, no writ).

ment pay of which divorce decree awarded non-employee spouse a percentage).

Accordingly, we conclude that the court erred by attempting to "prohibit [Leland] from doing that which the federal law properly g[ives] him a right to do." *See Burson,* 615 S.W.2d at 196. Thus, Leland's third issue is meritorious.

We modify the court's decree by deleting the paragraph therein which requires Leland to make direct payments to Maria in the future in the event he waives any of his present monthly Navy retirement payments in exchange for an increase in his VA disability benefits. We affirm the judgment as modified.