NO. 07-05-0205-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



NOVEMBER 2, 2006


______________________________


 

IN THE MATTER OF THE MARRIAGE OF


RACHEL M. GONZALEZ AND HECTOR N. GONZALEZ


_________________________________



FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2004-525,138; HONORABLE CECIL G. PURYEAR, JUDGE


_______________________________




Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 Hector N. Gonzalez presents a single issue by which he challenges the provision
of his divorce decree directing payment of spousal maintenance to appellee Rachel M.
Gonzalez. We affirm the decree.

 During their 22 years of marriage the couple had two daughters. Rachel also earned
a college degree and taught in private school. Hector worked as a gospel singer with
family members for several years. In 1999 the couple sold their house and invested the
proceeds in equipment for Hector to establish a carpet cleaning business. He operated
this business as a sole proprietorship through the time of trial. In 2000 and 2003 Rachel
had been diagnosed and treated for cancer. Hector moved out of their rented house in the
fall of 2003. Rachel filed a petition for divorce in January 2004 alleging the marriage had
become insupportable and Hector engaged in "cruel treatment." At that time the couple's
older daughter, Crystal, was 18 years old and attending college in Lubbock. Their second
child, Celeste, was 17 years old. Rachel's first amended petition sought a disproportionate
division of the community estate and spousal maintenance. Temporary orders issued April
30, 2004 directed Hector to pay rent and utilities through that date on the house occupied
by Rachel, insurance and loan payments on vehicles used by Rachel and Celeste, health
insurance for Rachel and a $70 per week cash payment. Beginning May 1, 2004, Hector
was ordered to pay $1715 as "spousal/child support." In the summer of 2004 Rachel and
Celeste moved to Austin where Celeste began college in the fall. Celeste turned 18 in
November 2004. 

 At the final hearing in April 2005 Hector and Rachel were the only witnesses. The
parties presented differing views of the value of the carpet cleaning business. Hector
believed the business had no net value while Rachel, though conceding no knowledge of
business debts, valued the business at approximately $20,000. Calculation of the income
from the business and its value was hindered by the poor state of business records and
Hector's failure to file tax returns in 2003 and 2004. The major community debt was a joint
student loan with a balance just under $38,000. (1) Rachel testified she was employed full-time as a recruiter for Austin Community College. She also testified to her income and
expenses while living in Austin. The parties also presented testimony concerning Hector's
failure to make payments to Rachel required under the court's temporary support order. 

 The final decree terminated the marriage and divided the community estate by
awarding each spouse personal property, cash and accounts. It awarded to Rachel a 1998
Chevrolet Blazer. Hector was awarded the sole proprietorship business and the 1986 van
used in that business. The decree made Rachel responsible for the debt on the Chevrolet
Blazer and half of the outstanding student loan. Hector was made solely responsible for
all debts of the business, half of the student loan, outstanding tax liability attributable to
operation of the business, and the balance due on a credit card account. He was also
ordered to pay Rachel $1000 per month in spousal maintenance for twelve months
beginning May 1, 2005. Finally, the order found Hector in contempt for failing to make
support payments under the court's temporary orders. He was ordered to serve 180 days
in jail, commitment being suspended conditioned on his payment of $6540 in past due
support. Hector timely perfected appeal from the trial court's decree and, as noted,
presents a single issue challenging the award of spousal maintenance. 

 The award of post-divorce spousal maintenance or alimony was impermissible
under the statutes and public policy of Texas until 1995. Ex parte Casey, 944 S.W.2d 18,
19 (Tex.App.-Houston [14th Dist.] 1997, no pet.). Such awards are now authorized in
limited circumstances by Chapter 8 of the Family Code. Tex. Fam. Code Ann. §§ 8.001-
.305 (Vernon 2006). Section 8.051 provides a court may order maintenance payments for
a spouse only if:

 (1) the spouse from whom maintenance is requested was convicted of or
received deferred adjudication for a criminal offense that also constitutes an
act of family violence under Title 4 and the offense occurred:


 (A) within two years before the date on which a suit for dissolution of
the marriage is filed; or


 (B) while the suit is pending; or


 (2) the duration of the marriage was 10 years or longer, the spouse seeking
maintenance lacks sufficient property, including property distributed to the
spouse under this code, to provide for the spouse's minimum reasonable
needs, as limited by Section 8.054, and the spouse seeking maintenance:


 (A) is unable to support himself or herself through appropriate
employment because of an incapacitating physical or mental
disability;


 (B) is the custodian of a child of the marriage of any age who requires
substantial care and personal supervision because a physical or
mental disability makes it necessary, taking into consideration the
needs of the child, that the spouse not be employed outside the
home; or


 (C) clearly lacks earning ability in the labor market adequate to
provide support for the spouse's minimum reasonable needs, as
limited by Section 8.054. 

Tex. Fam. Code Ann. § 8.051 (Vernon 2006). Chapter 8 also establishes a presumption
against an award of spousal maintenance which may be overcome by evidence the spouse
seeking maintenance has exercised diligence in seeking suitable employment or
developing skills to become self supporting, or is unable to do so because the spouse or
a child under the spouse's care suffers from a disability. Tex. Fam. Code Ann. § 8.053
(Vernon 2006); see Pickens v. Pickens, 62 S.W.3d 212, 215 (Tex.App.-Dallas 2001, pet.
denied) (addressing disability). Additional limitations are placed on the amount and
duration of maintenance awards. Monthly maintenance may be no more than 20 percent
of the obligor's average gross income or $2500, whichever is less. Tex. Fam. Code Ann.
§ 8.055 (Vernon 2006). The period of payments must be limited to "the shortest
reasonable period that allows the spouse seeking maintenance to meet the spouse's
minimum reasonable needs by obtaining appropriate employment or developing an
appropriate skill," unless the spouse's ability to provide for the spouse's own needs is
precluded by disability, care for a young child or other "compelling impediment." Tex. Fam.
Code Ann. § 8.054(a) (Vernon 2006). 

 We review an award of spousal maintenance for abuse of discretion. Alexander v.
Alexander, 982 S.W.2d 116, 119 (Tex.App.-Houston [1st Dist.] 1998, no pet). The trial
court does not abuse its discretion if there is some probative and substantive evidence to
support the trial court's decision or if the evidence is conflicting. In re A.S.M., 172 S.W.3d
710, 717 (Tex.App.-Fort Worth 2005, no pet.). Where, as here, no findings of fact and
conclusions of law are requested or filed, we presume the court made findings necessary
to support its judgment. Yarbrough v. Yarbrough, 151 S.W.3d 687, 690 (Tex.App.-Waco
2004, no pet.). Further, the judgment must be affirmed if it can be upheld on any legal
theory supported by the evidence. Id. 

 We agree with Hector's position there is no evidence of family violence or evidence
that Rachel is unable to support herself because of an incapacitating disability. (2) The trial
court's order can be upheld only if there is some probative evidence supporting implied
findings that (1) the parties were married at least ten years, (2) Rachel lacks sufficient
property to provide for her minimum reasonable needs, and (3) she clearly lacks earning
ability adequate to provide for her minimum reasonable needs. Limbaugh v. Limbaugh,
71 S.W.3d 1, 12 (Tex.App.-Waco 2002, no pet.). 

 There is no question the parties were married more than ten years. Hector also
concedes that Rachel lacks sufficient property to provide for her minimum reasonable
needs. Hector's brief and our review focus on the third element. The presence of that
element depends on two factual determinations: Rachel's minimum reasonable needs,
and whether she clearly lacked the earning ability to meet those needs. Rachel testified
her expenses totaled $2824 a month, and submitted a list of monthly expenses totaling that
amount. The list included the monthly payments on the 1998 Blazer, for which she was
responsible under the property division, but the list did not include other needs to which
Rachel testified, such as the need for new tires for the vehicle. (3) Her testimony and the list
provide some probative evidence from which the court could determine her minimum
reasonable needs. See Limbaugh, 71 S.W.3d at 14 (relying on similar evidence to support
findings of minimum reasonable needs). 

 Rachel's employment history is not fully developed in the evidence. As noted, at
some time during the marriage, she obtained a college degree. She testified she did not
hold a state teacher's certificate, (4) but had taught in a private high school that did not
require certification. She last taught during the school year ending in 2003. After she and
Celeste moved to Austin in the summer of 2004, Rachel worked at a department store and,
for a week, at another job. She also worked part-time as a substitute teacher, earning $70
a day. Her tax return shows total 2004 wages of just over $1500. Rachel testified she
borrowed money from several family members and friends. In January 2005, she obtained
a full-time job as a recruiter for Austin Community College. She said her health insurance
through her employer would become effective on May 1, 2005. Her monthly net income
from her full-time employment was $2170, leaving a shortfall of some $650 a month when
compared with her estimate of monthly expenses of $2824.

 Rachel's progression from part-time to full-time employment, with increasing
benefits, during the pendency of the divorce proceeding provides some evidence she
exercised diligence in seeking suitable employment. The trial court did not abuse its
discretion through its implied finding that she overcame the presumption established by
section 8.053(a).

 Hector argues that Rachel's possession of a college degree and her acquisition
of full-time employment by the time of trial disqualify her from spousal maintenance
through the operation of section 8.054, which limits the duration of maintenance to the
"shortest reasonable period that allows the spouse seeking maintenance to meet the
spouse's minimum reasonable needs by obtaining appropriate employment or developing
an appropriate skill . . . ." Tex. Fam. Code Ann. § 8.054 (Vernon 2006). He contends the
evidence is clear that Rachel has appropriate skills and had obtained appropriate
employment. We do not agree that the possession of a college degree disqualifies one
from spousal maintenance. See Deltuva v. Deltuva, 113 S.W.3d 882, 888 (Tex.App.-
Dallas 2003, no pet.) (award of spousal maintenance to college graduate realtor not abuse
of discretion). Nor do we agree that Rachel's mere obtaining of full-time employment
precludes the award of spousal maintenance to her when evidence shows she still is not
yet able to meet her minimum reasonable needs. Section 8.054 does not focus simply on
the period necessary to obtain employment, but that which allows the spouse to meet
minimum reasonable needs. 

 Hector's argument is essentially the same as that rejected by the court in In re
Marriage of Hale, 975 S.W.2d 694 (Tex.App.-Texarkana 1998, no pet.), which found no
statutory language and no authority to support the husband's contention that the wife's
gainful employment during their separation before divorce precluded an award of spousal
maintenance. (5) Id. at 698. We find no abuse of discretion in the trial court's implicit finding
that Rachel, at the time of trial, clearly lacked earning ability in the labor market adequate
to provide support for her minimum reasonable needs. See Deltuva, 113 S.W.3d at 888
(no abuse of discretion in award of maintenance to wife who acquired real estate license
and sold one house before trial) (citing Limbaugh, 71 S.W.3d at 15). 

 Appellant's issue is overruled, and the trial court's judgment is affirmed.


 James T. Campbell

 Justice










1. Evidence indicates both spouses benefitted from the proceeds of the loan.
2. Hector does not deny that Rachel was unable to work while recovering from
surgery to treat her cancer. However, those events occurred before the divorce petition
was filed.
3. Rachel's evidence also included a list of unpaid medical expenses totaling some
$7100. Her monthly expense list did not make any provision for payment of those medical
expenses.
4. She said she attempted to obtain state certification at one point, but did not "pass
the test."
5. We recognize Rachel's earning ability in the labor market greatly exceeds that of
the wife seeking maintenance in Marriage of Hale, 975 S.W.2d at 695-96. That difference
does not detract from the applicability of the court's holding to our situation.