TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-05-00769-CV




Mary Ghrist, Appellant


v.


Roy Ghrist, Appellee




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT

NO. 378,930, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING


 

D I S S E N T I N G O P I N I O N


 Ex parte Burson is indeed a pathmarking precedent on a state court's authority to
enforce a divorce decree by requiring payment of VA disability benefits. See 615 S.W.2d 192
(Tex. 1981) (orig. proceeding). The majority erroneously concludes that this case is just like
Burson and holds that the result must be the same. But the majority is mistaken in supposing
that Burson controls the outcome here. In Burson the enforcement order at issue required the
former service member to pay a portion of his VA disability pay to his former spouse. Such an
order is impermissible under federal law. See 38 U.S.C. § 5301(a) (Supp. III 2003). In this case,
we are presented with a divorce decree that, depending on its interpretation, may or may not
necessitate an impermissible enforcement order. Thus, disposing of the case before ascertaining
the appropriate interpretation of the decree is premature. For this reason, I would reverse the
trial court's order and remand for further proceedings to ascertain the intent of the parties and to
then determine whether the decree is enforceable. Accordingly, I respectfully dissent.


BACKGROUND

 During the Ghrists' marriage, Roy served 18 years in the U.S. Air Force, retiring
in 1975. Shortly after his retirement, it was determined that Roy was 40% disabled, making him
eligible to receive disability pay, which is non-taxable. (1) In 1976, while still married, Roy
waived a portion of his military retirement pay as required by statute to receive VA disability
pay. See 38 U.S.C. § 5305 (2000). He thereafter received two checks each month--one from
the Air Force for his retirement pay and one from the VA for his disability pay. At some point
later, but prior to the parties' divorce, Roy cancelled the waiver of military pay and thereafter
received only one check each month from the Air Force that included both his military
retirement pay and his disability pay.

 When the Ghrists divorced in 1985, they executed an agreed divorce decree. The
divorce became final, and neither party timely perfected an appeal. The relevant portion of the
decree states that:


The Court finds that Roy A. Ghrist now receives a monthly retirement benefit of
$772.00 gross and $625.00 disposable. The Court further finds that the
community interest in the monthly retirement benefit is fifty percent (50%). The
Court further finds that Respondent's [Mary] fifty percent (50%) community
interest is now equal to a monthly retirement benefit of $327.38. The Court
further finds that costs-of-living related increases are made to the present
retirement periodically and, in all probability, those costs-of-living related
increases will occur in the future.


 . . . .


It is ORDERED and DECREED that Mary S. Ghrist shall have judgment against
and recover from Roy A. Ghrist fifty percent (50%) of the present disposable and
future military retirement received each month by Roy A. Ghrist computing said
amount by deducting from his "gross", withholding only, to reach his "net". Any
election of benefits by Roy A. Ghrist shall not reduce the amount or the
percentage of the retirement awarded to Mary S. Ghrist.



(Emphasis in italics added.) The decree also designates Roy as a constructive trustee for Mary's
benefit with respect to the retirement.

 Shortly after the divorce, Mary began receiving payments directly from the Air
Force of the 50% awarded to her. See 10 U.S.C. § 1408(d)(1) (2000) (providing for direct
payment). Thereafter, Roy again waived a portion of his military retirement pay to receive VA
disability pay. He therefore returned to receiving his disability pay from the VA and his
retirement pay from the Air Force. The change reduced the amount he received from the Air
Force, in turn reducing the amount that Mary received each month.

 In 2003, approximately 15 years after Roy's post-divorce waiver of retirement
pay, Mary filed a petition for enforcement of the divorce decree. The trial court denied the
petition and made the following finding of fact:


Applying the formula for division of the military retirement contained in the
Decree signed by this Court in 1985, it is apparent that Petitioner [Mary] has lost
money and will continue to lose money each month which she would otherwise
receive as her one-half interest in Respondent's [Roy] military retirement directly
due to his post-divorce receipt of a portion of this retirement benefits in the form
of disability payments from the Veteran's Administration rather than continuing
to receive all of his retirement monies from the United States Air Force itself.



Despite finding that Mary's payment was reduced, the court concluded that enforcement of the
decree as it relates to military disability benefits is barred by federal statute and federal and state
case law. The court further concluded that Mary could not enforce a claim to recover the
amount by which her payments had been reduced based on military retirement monies paid to
Roy by the VA for his disability.


ANALYSIS

 On appeal, Mary urges that the trial court erred in determining it could not
enforce the agreed divorce decree. Relying on federal and state case law holding that federal
statutes preempt state courts from awarding VA disability benefits, Roy counters that
enforcement of the decree impermissibly penalizes him for electing to receive VA benefits. 
Mary also argues that, even if the decree improperly awarded VA disability benefits, Roy may
not now collaterally attack the agreement because it has become a final, unappealed judgment.

 The majority concludes that, because the Texas Supreme Court did not bar the
collateral attack in Burson, Roy is not barred from collaterally attacking the agreed divorce
decree in this case. I disagree, and begin with a discussion of federal preemption to supply the
context for my conclusion.


Federal preemption of VA disability benefits

 Both the United States Supreme Court and the Texas Supreme Court have held,
using different rationales, that federal preemption of VA disability benefits prevents a trial court
from dividing such benefits upon divorce as community property. See Mansell v. Mansell, 490
U.S. 581 (1989); Burson, 615 S.W.2d 192; Ex parte Johnson, 591 S.W.2d 453 (Tex. 1979) (orig.
proceeding). The trial court concluded--as does the majority--that Mansell and Burson
prohibited enforcement of the Ghrists' divorce decree as a matter of law.

 In Mansell, the California Court of Appeal had rejected a retired service
member's request to modify a divorce decree provision that awarded his former wife 50% of his
total military retirement pay, including a portion he had waived to receive VA disability benefits. 
490 U.S. at 586-87. The former service member argued that the Uniformed Services Former
Spouses' Protection Act (USFSPA) precluded the trial court from treating his VA disability
benefits as community property. Id. at 586. Congress enacted the USFSPA in direct response to
the Supreme Court's earlier decision in McCarty v. McCarty, 453 U.S. 210 (1981), which
determined that federal law preempted state courts from considering any military retirement
benefits as community property. Mansell, 490 U.S. at 587-88.

 The USFSPA explicitly permits state courts to treat "disposable retired pay" as
community property. 10 U.S.C. § 1408(c)(1) (2000). "Disposable retired pay" is defined as "the
total monthly retired pay to which a member is entitled" minus certain deductions, including
amounts waived in order to receive compensation under title 38, which covers veterans' benefits.
Id. § 1408(a)(4) (2000). The Supreme Court reasoned that, because pre-existing federal law, as
construed in McCarty, had preempted application of state community property law to military
retirement pay, only an affirmative grant of authority from Congress could restore the states'
authority to treat military retirement pay as community property. Mansell, 490 U.S. at 588. The
Court therefore interpreted the USFSPA as abrogating federal preemption only as to "disposable
retired pay." Id. at 589. Thus, the USFSPA does not grant state courts the power to award any
of the items deducted from gross retired pay such as VA disability benefits. See id. at 594-95.

 In Burson, a retired service member, after his divorce, waived all of his Air Force
disability retirement pay in exchange for VA disability benefits. 615 S.W.2d at 193. When he
subsequently failed to make payments to his former wife, she commenced contempt proceedings
to enforce their divorce decree, which had ordered him to pay her a portion of his Air Force
disability retirement pay each month. Id. The trial court held him in contempt and committed
him to jail. Id. The supreme court, in a habeas corpus proceeding, ordered that the service
member be discharged, concluding that federal law preempted state courts from ordering
payment of VA disability benefits. Id. In reaching this conclusion, the court relied on 38 U.S.C.
§ 3101(a), which has been redesignated without substantive change as 38 U.S.C. § 5301(a) and
now reads in part:


Nonassignability and exempt status of benefits


Payments of benefits due or to become due under any law administered by the
Secretary [of Veterans Affairs] shall not be assignable except to the extent
specifically authorized by law, and such payments made to, or on account of, a
beneficiary shall be exempt from taxation, shall be exempt from the claim of
creditors, and shall not be liable to attachment, levy, or seizure by or under any
legal or equitable process whatever, either before or after receipt by the
beneficiary.


38 U.S.C. § 5301(a). (2) The court held that VA benefits "are not divisible or assignable. They are
not property." Burson, 615 S.W.2d at 194. The court further held that "a divorce decree cannot
prohibit [the service member] from doing that which the federal law properly gave him the right
to do." Id. at 196. In addition, the court stated that "[f]ederal preemption of veterans benefits
for disability does not leave room for their defeat, either by implication or indirection." Id. 
Thus, a Texas court cannot expressly or impliedly prohibit a retired service member from
unilaterally waiving some or all of his military retirement pay in exchange for VA disability
benefits. Id.; Limbaugh v. Limbaugh, 71 S.W.3d 1, 17 (Tex. App.--Waco 2002, no pet.).

 In support of Roy's contention that federal law bars enforcement of the divorce
decree, he cites Limbaugh, 71 S.W.3d at 17, and Freeman v. Freeman, 133 S.W.3d 277, 280
(Tex. App.--San Antonio 2003, no pet.), both of which held provisions related to VA disability
benefits invalid. In Limbaugh, the Waco court held that a provision requiring the service
member to make up the difference in payment amount if he elected to receive VA disability pay
was invalid because it prohibited the service member "from doing that which the federal law
properly gave him a right to do." 71 S.W.3d at 18 (quoting Burson, 615 S.W.2d at 196). In
Freeman, the San Antonio court held that a provision preventing the service member from
electing to receive VA disability benefits was invalid for the same reason. 133 S.W.3d at 280
(citing Burson, 615 S.W.2d at 196; Limbaugh, 71 S.W.3d at 17). Both Limbaugh and Freeman,
however, involved direct appeals of divorce decrees, whereas the case before us involves a
collateral attack on a final, unappealed divorce decree; thus, neither case is controlling here. (3)

Collateral attack

 As with other final, unappealed judgments which are regular upon their face,
divorce judgments are not vulnerable to collateral attack. Berry v. Berry, 786 S.W.2d 672, 673
(Tex. 1990). Only a void judgment may be collaterally attacked. Browning v. Placke, 698
S.W.2d 362, 363 (Tex. 1985). A judgment is void only when the court rendering judgment "had
no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the
judgment, or no capacity to act as a court." Cook v. Cameron, 733 S.W.2d 137, 140 (Tex. 1987). 
All errors other than jurisdictional errors render the judgment merely voidable and must be
attacked within prescribed time limits. Id.

 Because Mansell recognizes preemption of state community property laws in the
area of VA disability benefits under the USFSPA (10 U.S.C. § 1408) and Burson does so
independently under 38 U.S.C. § 5301(a), the issue of collateral attack must be examined under
both statutes.


 1. The USFSPA

 The field of domestic relations is generally a matter of state law, and when
Congress passes general legislation, it rarely intends to displace state law in that particular area. 
Mansell, 490 U.S. at 587 (citing Rose v. Rose, 481 U.S. 619, 628 (1987) and Hisquierdo v.
Hisquierdo, 439 U.S. 572, 581 (1979)). When state family law has come into conflict with a
federal statute, the Supreme Court has limited review under the Supremacy Clause to a
determination of whether Congress has "positively required by direct enactment" that state law
be preempted. Hisquierdo, 439 U.S. at 581 (citing Wetmore v. Markoe, 196 U.S. 68, 77 (1904)). 
Before a state law governing domestic relations will be overridden, it must do "major damage"
to "clear and substantial" federal interests. Id. (quoting United States v. Yazell, 382 U.S. 341,
352 (1966)).

 Whether federal law preempts state community property laws is a different
question from whether the USFSPA preempts the common law doctrine of res judicata. Trahan
v. Trahan, 894 S.W.2d 113, 117 (Tex. App.--Austin 1995, writ denied), cert. denied, 517 U.S.
1155 (1996). In Mansell, the Supreme Court addressed the issue of federal preemption of state
community property laws, but also observed that it had no jurisdiction to decide whether the
doctrine of res judicata applied because that was a matter of state law. 490 U.S. at 586 n.5.

 The Texas Supreme Court has rejected collateral attacks on divorce decrees that
violated the USFSPA by awarding more than "disposable retired pay." See, e.g., Baxter v.
Ruddle, 794 S.W.2d 761, 762 (Tex. 1990) (decree awarded portion of gross military retirement
pay); Berry, 786 S.W.2d at 673 (decree awarded portion of gross military disability retirement
pay); Cook, 733 S.W.2d at 140 (decree awarded portion of gross military retirement pay). Each
case involved a divorce decree that had become final prior to the USFSPA's 1981 effective date.

 In Berry, the 1980 divorce decree ordered the service member to pay 25% of his
gross military disability retirement pay to his former wife, which he failed to do. 786 S.W.2d at
673. Pursuant to an agreed order on contempt and enforcement motions, the trial court mandated
payment; however, the service member then elected to receive his disability pay from the VA
and reduced his payments to his former wife. Id. The wife filed a motion to enforce the prior
order, but the trial court overruled the motion, and the court of appeals affirmed. Id. Even
though the Berrys' divorce decree became final before the effective date of the USFSPA, the
appellate court held that the USFSPA prevented state courts from treating military retirement
pay that had been waived to receive VA disability benefits as property divisible on divorce. Id. 
The court reasoned that retroactive application of the USFSPA was required because Mansell
permitted modification of a property settlement agreement that had become final. Id. The
supreme court reversed and remanded the case to the trial court, observing that the Mansell
decision turned on the California court's determination that it was appropriate under California
law to reopen the final settlement order, and that Mansell does not require a similar result under
Texas law. Id. at 673 (citing Mansell, 490 U.S. at 586 n.5). (4)

 The divorce decree in Berry became final before the USFSPA's 1981 effective
date, while the Ghrists' decree became final in 1985. Roy argues that Berry is distinguishable
because the question the supreme court specifically addressed was whether the USFSPA applied
retroactively to a divorce decree that was final before the USFSPA's enactment. See id. at 672. 
The language in Berry, however, is broader; the court states that "[b]ecause the final judgment is
voidable as opposed to void, the rule of res judicata would apply." Id. at 673. In a similar case,
the San Antonio court relied on Berry to prevent a collateral attack on a 1988 divorce decree. 
Jones v. Jones, 900 S.W.2d 786, 787 (Tex. App.--San Antonio 1995, writ denied); see also
Baker v. Donovan, 199 S.W.3d 577, 580 (Tex. App.--Houston [1st Dist.] 2006, pet. denied) (op.
on reh'g) (preventing collateral attack on 1987 decree). In Jones, a consent decree provided that
the former wife was entitled to 25% of 

the "monthly amount that a retired Major with 20 years service will receive on the date [the
service member] begins to receive his retirement." (Emphasis added.) After the divorce, the
service member retired, received a 40% disability rating, and elected to receive disability in lieu
of a portion of his retirement. Id. The trial court entered a judgment enforcing the decree in
favor of the former wife. Id. The appellate court affirmed the judgment, holding that the retired
service member could not collaterally attack the final, unappealed decree. Id. at 788. Based on
Berry and Jones, I conclude that federal preemption under the USFSPA does not prevent a state
court from enforcing a final, unappealed divorce decree awarding military retirement pay, even
when there has been a post-divorce waiver of retirement pay in exchange for VA disability
benefits.


2. Section 5301(a)

 The Texas Supreme Court has also considered the issue of collateral attack in the
context of 38 U.S.C. § 5301(a). In Burson, the supreme court allowed a collateral attack, but did
not explicitly state that the judgment was void. 615 S.W.2d at 194. The court specifically
addressed collateral attack, observing that an award of retirement pay cannot be collaterally
attacked, but distinguishing VA benefits because federal preemption exists:


A district court, under our decisions, has the power to enforce a decree ordering a
spouse to make payments out of the Air Force disability retirement pay. If there
is no appeal from the divorce court's division of property, that decree may not be
collaterally attacked.



The important fact which distinguishes this case from those cited above is that
Burson, after the divorce decree, made an election to forego his Air Force
disability benefits and to receive instead the disability benefits from the Veterans
Administration. Veterans Administration benefits, unlike Air Force disability
benefits, are not divisible or assignable. They are not property.

Military disability retirement pay and Veterans Administration benefits are
established by different statutory schemes. The statutes control the property
characterization of each and the fact of, or lack of, federal preemption of each.



Id. at 194-95 (citations and footnotes omitted).

 The Burson case actually involved two judgments--the original divorce decree
and the trial court's order enforcing the divorce decree. Id. at 193. The divorce decree awarded
only a set amount from the service member's "Air Force disability check." Id. In the language
quoted above, the court recognized that a district court could enforce a decree ordering payments
out of Air Force disability retirement pay and that the decree would not be subject to collateral
attack. Id. at 194. Because the Burson decree awarded only Air Force disability, it is clear that
the judgment at issue was the trial court's order of enforcement. The supreme court stated that:


Burson argues that the district court cannot order him to pay over to [his former
wife] any portion of the Veterans Administration disability benefits because the
supremacy clause of the United States Constitution preempts this area from the
purview of state courts. We agree. We, therefore, grant the writ of habeas corpus
and order Burson discharged.



Id. at 193. An enforcement order that expressly requires payment of VA disability benefits, or
that impliedly requires payment of such benefits because they are the only income or asset
available to satisfy the order, would violate section 5301(a), which states that VA disability
benefits "shall not be liable to attachment, levy, or seizure by or under any legal or equitable
process whatever, either before or after receipt by the beneficiary." 38 U.S.C. § 5301(a). (5) Such
an order would be void 

because the court had no jurisdiction to enter the judgment, and therefore would be subject to
collateral attack. See Cook, 733 S.W.2d at 140. This explains why the Burson court permitted
the collateral attack.

 Cases where collateral attacks have been sustained on the theory that the
judgment is void because the court lacked jurisdiction to enter the particular judgment involve
error that "is quite serious and strikes at the very power of the court to render the judgment." 
Austin Indep. Sch. Dist. v. Sierra Club, 495 S.W.2d 878, 882 (Tex. 1973). The mere fact that an
action by a court is contrary to a statute, constitutional provision, or rule of civil or appellate
procedure makes the judgment only voidable or erroneous, absent one of the "rare
circumstances" that makes a judgment void. Mapco, Inc. v. Forrest, 795 S.W.2d 700, 703 (Tex.
1990). Section 5301(a), however, clearly evidences Congress's intent to strike at the very power
of a court to render judgment, and therefore 

an order of enforcement awarding VA disability benefits is one of the rare circumstances where
a particular judgment is void. Thus, as the supreme court in Burson recognized, section 5301(a)
acts as a limit on a court's power to enforce even a final, unappealed divorce decree.

 The Ghrists' situation is similar to that in Burson. As in Burson, the parties'
divorce decree was enforceable when entered into, became final, and was not appealed. Also, as
in Burson, there was a post-divorce waiver of military retirement pay in exchange for VA
disability pay and an attempt to enforce the original decree. At this point, however, the two
cases take divergent paths. In Burson, the trial court attempted to enforce the original decree by
requiring the former service member to make payments from his VA disability pay. It was this
method of enforcement that the supreme court held invalid. In this case, however, the trial court
has not attempted to enforce the decree. As discussed below, the Ghrists' divorce decree,
depending on its interpretation, may or may not necessitate an impermissible enforcement order. 
Without additional proceedings in the trial court, it is premature to conclude the Ghrists' decree
is unenforceable.

 In summary, under both the USFSPA and 38 U.S.C. § 5301(a), a court may
enforce a final, unappealed divorce decree awarding military retirement pay even though there
has been a waiver of retirement pay to receive VA disability benefits. However, the court's
power to enforce the decree is limited by section 5301(a), and the court therefore may not
expressly or impliedly require the payment of VA disability benefits. (6) Having made this
determination, the next step is to consider whether the Ghrists' divorce decree is capable of
enforcement as written.


Interpretation and enforcement of the divorce decree

 The Ghrists dispute the proper interpretation of their divorce decree. A marital
property settlement agreement that is incorporated into a final divorce decree is treated as a
contract, 

and its legal force and meaning are governed by the law of contracts. McGoodwin v.
McGoodwin, 671 S.W.2d 880, 882 (Tex. 1984). In construing a contract, the primary concern of
the court is to 

ascertain and give effect to the true intention of the parties as they expressed that intent in the
instrument. Gulf Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417, 423 (Tex. 2000); Coker v.
Coker, 650 S.W.2d 391, 393 (Tex. 1983). Whether a contract is ambiguous is a question of law
for the court to decide by looking at the contract as a whole in light of the circumstances present
when the parties entered the contract. Coker, 650 S.W.2d at 394. Contract language is accorded
its plain, grammatical meaning unless it definitely appears that the intention of the parties would
thereby be defeated. Lyons v. Montgomery, 701 S.W.2d 641, 643 (Tex. 1985). If the written
instrument's language can be given a certain or definite legal meaning or interpretation, then it is
not ambiguous. Buys v. Buys, 924 S.W.2d 369, 372 (Tex. 1996) (citing Coker, 650 S.W.2d at
393). A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably
susceptible to more than one meaning. Coker, 650 S.W.2d at 393.

 The plain language of the Ghrists' agreed divorce decree does not explicitly
award a portion of VA disability benefits. Instead, the agreement addresses the division of
Roy's "retirement benefit." (7) It awards Mary 50% of the retirement benefit and further provides
that "[a]ny election of benefits" by Roy "shall not reduce the amount or percentage of the
retirement awarded" to Mary. (Emphasis added.)


 The first inquiry is whether the phrase "election of benefits" has a plain,
grammatical meaning that is unambiguous and, if so, whether that meaning encompasses Roy's
waiver of part of his military retirement pay. VA disability payments are commonly referred to
as benefits. See, e.g., 38 U.S.C. § 5301; Mansell, 490 U.S. at 583. Title 38 of the U.S. Code,
which addresses such payments, is titled "Veterans' Benefits." An "election" is defined as "[t]he
exercise of choice; esp., the act of choosing from several possible rights or remedies in a way
that precludes the use of other rights or remedies." Black's Law Dictionary 536 (7th ed. 1999). 
Because it was determined that Roy was disabled, he had the option of waiving retirement pay to
receive VA disability pay, and he chose to exercise that option. Burson also characterizes this
choice as an election. 615 S.W.2d at 196 ("[F]ederal law empowered Burson to make an
election."). Thus, the phrase "election of benefits" has a plain, grammatical meaning and
includes Roy's waiver of retirement pay to receive VA disability benefits. This interpretation is
reinforced by looking at the circumstances present when the parties entered the contract, see
Coker, 650 S.W.2d at 394, namely that during the marriage Roy had initially waived retirement
pay to receive VA disability benefits, making it likely that both parties were aware of the
possibility and effect of such an option. It is clear therefore that the plain language of the decree
encompassed a potential future waiver of VA benefits by Roy.

 What is unclear, however, is what the parties contemplated would be the effect of
a waiver of retirement pay. The decree states that any election of benefits "shall not reduce the
amount or percentage of the retirement awarded." At the hearing on the motion to enter and the
motion to reconsider, there was no testimony addressing the parties' intent as to that provision. 
The language can be interpreted as allowing Roy to make certain elections of benefits, but not
any election that would reduce the amount of retirement. If interpreted in this way, even though
included in a final, unappealed judgment, such a provision could not be enforced because it
requires a court to prevent Roy from "doing that which the federal law properly gave him a right
to do." See Burson, 615 S.W.2d at 196. However, the language also can be interpreted as a
voluntary commitment by Roy to provide a continuous stream of income to Mary by allowing
for alternative payments if his retirement benefits are reduced by his election. If this is what the
parties intended, then a court could enforce their agreement to the extent income or assets exist
apart from VA disability benefits to satisfy the judgment. Without testimony regarding the
parties' intent, the decree could be subject to either of these interpretations and perhaps others. 
Because the decree is reasonably susceptible to more than one meaning, it is ambiguous. See
Coker, 650 S.W.2d at 393.

 A court may render further orders to enforce the division of property made in a
divorce decree to assist in the implementation of or to clarify the prior order; however, the court
may not amend, modify, alter or change the division of property made in the divorce decree. 
Tex. Fam. Code Ann. §§ 9.006(a), .007(a) (West 2006). In Mary's petition for enforcement, she
requested that, "if the Court finds that any part of the order sought to be enforced is not specific
enough to be enforced by contempt, the Court enter a clarifying order restating the terms of the
order, decree, or judgment in a manner specific enough to allow enforcement by contempt." 
Because the Ghrists' agreed divorce decree is ambiguous, the trial court must ascertain the
parties' intent before it may determine the extent to which the award of retirement benefits is
enforceable. (8)


CONCLUSION

 The parties' divorce decree is ambiguous and subject to both enforceable and
unenforceable interpretations. As such, it is premature to conclude that enforcement of the
decree would require an impermissible order. Because the trial court determined that as a matter
of law it could not enforce the Ghrists' divorce decree, the court did not ascertain the parties'
intent regarding the effect of the "election of benefits" provision in the decree. I would therefore
reverse the trial court's order and remand this case to the trial court to make such a finding. I
respectfully dissent.



 

 Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop


Filed: May 11, 2007
1. There was a reference at the hearing on the petition for enforcement that Roy's disability
rating had increased to 60%. The record does not, however, disclose the nature of Roy's disability. 
2. The Supreme Court observed in Mansell that, because it decided the USFSPA precluded
treating VA disability benefits as community property, it need not address whether this
nonassignability provision independently protects such pay. See Mansell v. Mansell, 490 U.S. 581,
587 n.6 (1989).
3. Limbaugh and Freeman are further distinguishable because they involved language
included in the divorce decree by the court and not by agreement of the parties. Ordinarily, parties
may place in an agreed divorce decree provisions that could not have been ordered by the trial court
if it had divided the property, and the judgment agreed to by the parties is binding on them. Baxter
v. Ruddle, 794 S.W.2d 761, 763 (Tex. 1990) (agreement awarded portion of gross military
retirement pay including post-divorce increases); Boyett v. Boyett, 799 S.W.2d 360, 363 (Tex.
App.--Houston [14th Dist.] 1990, no writ) (agreement awarded portion of husband's separate
property to wife); Traylor v. Traylor, 789 S.W.2d 701, 702-03 (Tex. App.--Texarkana 1990, no
pet.) (agreement required husband to maintain medical insurance on wife); see also Francis v.
Francis, 412 S.W.2d 29, 33 (Tex. 1967) (even before family code provided for limited awards of
spousal maintenance, parties' contract for spousal support payments did not violate public policy
against court-ordered alimony).
4. Because of Berry's procedural posture, the court addressed only the application of res
judicata in the context of the USFSPA; it did not address enforcement, section 5301 of Title 38 of
the U.S. Code, or Burson. See Berry v. Berry, 786 S.W.2d 672, 673 (Tex. 1990).
5. The legislative history of this provision "recognizes two purposes: to 'avoid the possibility
of the Veterans' Administration . . . being placed in the position of a collection agency' and to
'prevent the deprivation and depletion of the means of subsistence of veterans dependent upon these
benefits as the main source of their income." Rose v. Rose, 481 U.S. 619, 630 (1987) (citing S. Rep.
No. 94-1243, pp. 147-148 (1976)).


 The Supreme Court has held that this statute does not prevent a court from using VA
disability benefits to enforce a child support order because the statute's legislative history showed
that the benefits "compensate for impaired earning capacity and are intended to 'provide reasonable
and adequate compensation for veterans and their families.'" Id. In Rose, however, the court
distinguished support obligations such as child support and alimony from divisions of property. Id.
at 631-32 ("[I]n reaching what was clearly an alternative holding in Wissner [v. Wissner, 338 U.S.
655 (1950)] that community property division of insurance proceeds would constitute a 'seizure'
in violation of a provision against 'attachment, levy, or seizure,' the Court was careful to identify
a possible exception for alimony and child support cases. The suggested basis for this exception was
that family support obligations are deeply rooted moral responsibilities, while the community
property concept is more akin to an amoral business relationship."); id. at 632 n.6 ("We construed
these amendments to 'expressly override' the anti-attachment provision for support claims, finding
it 'logical to conclude that Congress . . . thought that a family's need for support could justify
garnishment, even though it deflected other federal benefit programs from their intended goals, but
that community property claims, which are not based on need, could not do so.'" (quoting
Hisquierdo v. Hisquierdo, 439 U.S. 572, 587 (1979))).
6. In Baker v. Donovan, the Houston court of appeals did not discuss section 5301; however,
the enforcement order it upheld did not require the service member to pay any portion of his VA
disability benefits. 199 S.W.3d 577 (Tex. App.--Houston [1st Dist.] 2006, pet. denied) (op. on
reh'g). After the parties' divorce, the service member retired and began receiving $5000 per month,
which included $1069 designated as VA disability pay. Id. at 578. On the former spouse's petition
for enforcement and clarification of the parties' agreed divorce decree, the trial court ordered that
the service member pay his former spouse $387.87 each month from his disposable military
retirement pay. Id. at 578-79. On appeal, the service member argued that the trial court erred
because it failed to take into account his VA disability pay and, thus, failed to reduce the retirement
pay by the amount of disability. Id. at 579. The court disagreed, holding that the decree could not
be collaterally attacked and that any modification of the decree could only be considered upon the
timely filing of a motion to modify. Id. at 580.


 Similarly, courts from other states have upheld final, unappealed divorce decrees agreed
to by the parties where the agreements could be enforced without reference to VA disability benefits. 
See, e.g., Danielson v. Evans, 36 P.3d 749, 760-61 (Ariz. Ct. App. 2006) (contempt order enforcing
agreed divorce decree did not violate federal law where court order did not require payment from
VA disability pay and former service member failed to show that VA pay was his only source for
making such payment); Abernethy v. Fishkin, 699 So. 2d 235, 240 (Fla. 1997) ("[W]hile federal law
prohibits the division of disability benefits, it does not prohibit spouses from entering into a property
settlement agreement that awards the non-military spouse a set portion of the military spouse's
retirement pay. Nor does it preclude indemnification provisions ensuring such payments, so long
as veterans' disability benefits are not the source of such payments."); In re Marriage of Nielsen,
792 N.E.2d 844, 849 (Ill. App. Ct. 2003) (trial court impermissibly enforced divorce decree by
requiring payment from disability benefits; cause was remanded to determine if former service
member was free to satisfy his obligation with assets other than his disability benefits); Scheidel v.
Scheidel, 4 P.3d 670, 674 (N.M. Ct. App. 2000) ("[F]ederal law does not prohibit state courts from
enforcing indemnity provisions which ensure the payment of a minimum sum to a non-military
spouse as his or her share of a community pension, provided that veterans' disability benefits are
not specified as the source of such payments.").
7. Roy argues that the agreement's use of the term "disposable" twice in discussing
retirement indicates that Mary's award was limited to "disposable retired pay" as defined in the
USFSPA, which omits amounts waived in order to receive VA disability benefits. See 10 U.S.C.
§ 1408(a)(4). The agreement, however, does not explicitly adopt the statutory definition. 
Furthermore, in awarding Mary 50% of the "present disposable and future military retirement," the
agreement states that "said amount" is computed by "deducting from [Roy's] 'gross', withholding
only, to reach his 'net'." The inclusion of this provision is inconsistent with an intent to adopt the
statutory definition.
8. A Houston court of appeals has held that, when the parties did not address VA disability
benefits in the decree, it would be an impermissible modification of the original decree for the court
to take the benefits into account during a clarification. Baker v. Donovan, 199 S.W.3d 577, 580
(Tex. App.--Houston [1st Dist.] 2006, pet. denied) (op. on reh'g).