# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-05-00769-CV

**Mary Ghrist, Appellant**

**v.**

**Roy Ghrist, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NO. 378,930, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## DISSENTING OPINION

I withdraw my dissenting opinion dated May 11, 2007, and substitute the following.

*Ex parte Burson* is indeed a pathmarking precedent on a state court's authority to enforce a divorce decree by requiring payment of VA disability benefits. *See* 615 S.W.2d 192 (Tex. 1981) (orig. proceeding). The majority erroneously concludes that this case is just like *Burson* and holds that the result must be the same. But the majority is mistaken in supposing that *Burson* controls the outcome here. In *Burson* the enforcement order at issue *required* the former service member to pay a portion of his VA disability pay to his former spouse. Such an order is impermissible under federal law. *See* 38 U.S.C. § 5301(a) (Supp. III 2003). In this case, we are presented with a divorce decree that, depending on its interpretation, may or may not necessitate an impermissible enforcement order. Thus, disposing of the case before ascertaining the appropriate interpretation of the decree is premature. For this reason, I would reverse the trial court's order and

remand for further proceedings to ascertain the intent of the parties and to then determine whether the decree is enforceable. Accordingly, I respectfully dissent.

## BACKGROUND

During the Ghrists' marriage, Roy served 18 years in the U.S. Air Force, retiring in 1975. Shortly after his retirement, it was determined that Roy was 40% disabled, making him eligible to receive disability pay, which is non-taxable.[1] In 1976, while still married, Roy waived a portion of his military retirement pay as required by statute to receive VA disability pay. *See* 38 U.S.C. § 5305 (2000). He thereafter received two checks each month—one from the Air Force for his retirement pay and one from the VA for his disability pay. At some point later, but prior to the parties' divorce, Roy cancelled the waiver of military pay and thereafter received only one check each month from the Air Force that included both his military retirement pay and his disability pay.

When the Ghrists divorced in 1985, they executed an agreed divorce decree. The divorce became final, and neither party timely perfected an appeal. The relevant portion of the decree states that:

> The Court finds that Roy A. Ghrist now receives a monthly retirement benefit of $772.00 gross and $625.00 disposable. The Court further finds that the community interest in the monthly retirement benefit is fifty percent (50%). The Court further finds that Respondent's [Mary] fifty percent (50%) community interest is now equal to a monthly retirement benefit of $327.38. The Court further finds that costs-of-living related increases are made to the present retirement periodically and, in all probability, those costs-of-living related increases will occur in the future.

---

[1] There was a reference at the hearing on the petition for enforcement that Roy's disability rating had increased to 60%. The record does not, however, disclose the nature of Roy's disability.

. . . .

> It is ORDERED and DECREED that Mary S. Ghrist shall have judgment against and recover from Roy A. Ghrist fifty percent (50%) of the present disposable and future military retirement received each month by Roy A. Ghrist computing said amount by deducting from his "gross", <u>withholding only</u>, to reach his "net". *Any election of benefits by Roy A. Ghrist shall not reduce the amount or the percentage of the retirement awarded to Mary S. Ghrist.*

(Emphasis in italics added.) The decree also designates Roy as a constructive trustee for Mary's benefit with respect to the retirement.

Shortly after the divorce, Mary began receiving payments directly from the Air Force of the 50% awarded to her. *See* 10 U.S.C. § 1408(d)(1) (2000) (providing for direct payment). Thereafter, Roy again waived a portion of his military retirement pay to receive VA disability pay. He therefore returned to receiving his disability pay from the VA and his retirement pay from the Air Force. The change reduced the amount he received from the Air Force, in turn reducing the amount that Mary received each month.

In 2003, approximately 15 years after Roy's post-divorce waiver of retirement pay, Mary filed a petition for enforcement of the divorce decree. The trial court denied the petition and made the following finding of fact:

> Applying the formula for division of the military retirement contained in the Decree signed by this Court in 1985, it is apparent that Petitioner [Mary] has lost money and will continue to lose money each month which she would otherwise receive as her one-half interest in Respondent's [Roy] military retirement directly due to his post-divorce receipt of a portion of this retirement benefits in the form of disability payments from the Veteran's Administration rather than continuing to receive all of his retirement monies from the United States Air Force itself.

3

Despite finding that Mary's payment was reduced, the court concluded that enforcement of the decree as it relates to military disability benefits is barred by federal statute and federal and state case law. The court further concluded that Mary could not enforce a claim to recover the amount by which her payments had been reduced based on military retirement monies paid to Roy by the VA for his disability.

## ANALYSIS

On appeal, Mary urges that the trial court erred in determining it could not enforce the agreed divorce decree. Relying on federal and state case law holding that federal statutes preempt state courts from awarding VA disability benefits, Roy counters that enforcement of the decree impermissibly penalizes him for electing to receive VA benefits. Mary also argues that, even if the decree improperly awarded VA disability benefits, Roy may not now collaterally attack the agreement because it has become a final, unappealed judgment.

The majority concludes that, because the Texas Supreme Court did not bar the collateral attack in *Burson*, Roy is not barred from collaterally attacking the agreed divorce decree in this case. I disagree, and begin with a discussion of federal preemption to supply the context for my conclusion.

### *Federal preemption of VA disability benefits*

Both the United States Supreme Court and the Texas Supreme Court have held, using different rationales, that federal preemption of VA disability benefits prevents a trial court from dividing such benefits upon divorce as community property. *See Mansell v. Mansell*, 490 U.S.

4

581 (1989); *Burson*, 615 S.W.2d 192; *Ex parte Johnson*, 591 S.W.2d 453 (Tex. 1979) (orig. proceeding). The trial court concluded—as does the majority—that *Mansell* and *Burson* prohibited enforcement of the Ghrists' divorce decree as a matter of law.

In *Mansell*, the California Court of Appeal had rejected a retired service member's request to modify a divorce decree provision that awarded his former wife 50% of his total military retirement pay, including a portion he had waived to receive VA disability benefits. 490 U.S. at 586-87. The former service member argued that the Uniformed Services Former Spouses' Protection Act (USFSPA) precluded the trial court from treating his VA disability benefits as community property. *Id.* at 586. Congress enacted the USFSPA in direct response to the Supreme Court's earlier decision in *McCarty v. McCarty*, 453 U.S. 210 (1981), which determined that federal law preempted state courts from considering *any* military retirement benefits as community property. *Mansell*, 490 U.S. at 587-88.

The USFSPA explicitly permits state courts to treat "disposable retired pay" as community property. 10 U.S.C. § 1408(c)(1) (2000). "Disposable retired pay" is defined as "the total monthly retired pay to which a member is entitled" minus certain deductions, including amounts waived in order to receive compensation under title 38, which covers veterans' benefits. *Id.* § 1408(a)(4) (2000). The Supreme Court reasoned that, because pre-existing federal law, as construed in *McCarty*, had preempted application of state community property law to military retirement pay, only an affirmative grant of authority from Congress could restore the states' authority to treat military retirement pay as community property. *Mansell*, 490 U.S. at 588. The Court therefore interpreted the USFSPA as abrogating federal preemption only as to "disposable

retired pay." *Id.* at 589.  Thus, the USFSPA does not grant state courts the power to award any of the items deducted from gross retired pay such as VA disability benefits.  *See id.* at 594-95.

In *Burson*, a retired service member, *after* his divorce, waived all of his Air Force disability retirement pay in exchange for VA disability benefits.[2]  615 S.W.2d at 193.  When he subsequently failed to make payments to his former wife, she commenced contempt proceedings to enforce their divorce decree, which had ordered him to pay her a portion of his Air Force disability retirement pay each month.  *Id.*  The trial court held him in contempt and committed him to jail.  *Id.* The supreme court, in a habeas corpus proceeding, ordered that the service member be discharged, concluding that federal law preempted state courts from ordering payment of VA disability benefits. *Id.*  In reaching this conclusion, the court relied on 38 U.S.C. § 3101(a), which has been redesignated without substantive change as 38 U.S.C. § 5301(a) and now reads in part:

Nonassignability and exempt status of benefits

Payments of benefits due or to become due under any law administered by the Secretary [of Veterans Affairs] shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

---

[2]  Burson was 100% disabled, receiving only disability pay from the Air Force and, after the divorce, he made an election to receive his total disability benefits from the VA. At the time of the contempt hearing, Burson was not receiving any Air Force disability or retired pay. His only source of income was his VA disability pay. Roy Ghrist was 40% disabled and continues to receive Air Force retired pay in an amount that is in excess of fifty percent of his combined retirement and disability pay.

38 U.S.C. § 5301(a).[3] The court held that VA benefits "are not divisible or assignable. They are not property." *Burson*, 615 S.W.2d at 194. The court further held that "a divorce decree cannot prohibit [the service member] from doing that which the federal law properly gave him the right to do." *Id.* at 196. In addition, the court stated that "[f]ederal preemption of veterans benefits for disability does not leave room for their defeat, either by implication or indirection." *Id.* Thus, a Texas court cannot expressly or impliedly prohibit a retired service member from unilaterally waiving some or all of his military retirement pay in exchange for VA disability benefits. *Id.*; *Limbaugh v. Limbaugh*, 71 S.W.3d 1, 17 (Tex. App.—Waco 2002, no pet.).

In support of Roy's contention that federal law bars enforcement of the divorce decree, he cites *Limbaugh*, 71 S.W.3d at 17, and *Freeman v. Freeman*, 133 S.W.3d 277, 280 (Tex. App.—San Antonio 2003, no pet.), both of which held provisions related to VA disability benefits invalid. In *Limbaugh*, the Waco court held that a provision requiring the service member to make up the difference in payment amount if he elected to receive VA disability pay was invalid because it prohibited the service member "from doing that which the federal law properly gave him a right to do." 71 S.W.3d at 18 (quoting *Burson*, 615 S.W.2d at 196). In *Freeman*, the San Antonio court held that a provision preventing the service member from electing to receive VA disability benefits was invalid for the same reason. 133 S.W.3d at 280 (citing *Burson*, 615 S.W.2d at 196; *Limbaugh*, 71 S.W.3d at 17). Both *Limbaugh* and *Freeman*, however, involved direct appeals of

---

[3] The Supreme Court observed in *Mansell* that, because it decided the USFSPA precluded treating VA disability benefits as community property, it need not address whether this nonassignability provision independently protects such pay. *See Mansell v. Mansell*, 490 U.S. 581, 587 n.6 (1989).

7

divorce decrees, whereas the case before us involves a collateral attack on a final, unappealed

divorce decree; thus, neither case is controlling here.[4]

***Collateral attack***

As with other final, unappealed judgments which are regular upon their face, divorce

judgments are not vulnerable to collateral attack. *Berry v. Berry*, 786 S.W.2d 672, 673 (Tex. 1990).

Only a void judgment may be collaterally attacked. *Browning v. Placke*, 698 S.W.2d 362, 363

(Tex. 1985). A judgment is void only when the court rendering judgment "had no jurisdiction of the

parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to

act as a court." *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex. 1987). All errors other than

jurisdictional errors render the judgment merely voidable and must be attacked within prescribed

time limits. *Id.*

Because *Mansell* recognizes preemption of state community property laws in the area

of VA disability benefits under the USFSPA (10 U.S.C. § 1408) and *Burson* does so independently

under 38 U.S.C. § 5301(a), the issue of collateral attack must be examined under both statutes.

---

[4] *Limbaugh* and *Freeman* are further distinguishable because they involved language included in the divorce decree by the court and not by agreement of the parties. Ordinarily, parties may place in an agreed divorce decree provisions that could not have been ordered by the trial court if it had divided the property, and the judgment agreed to by the parties is binding on them. *Baxter v. Ruddle*, 794 S.W.2d 761, 763 (Tex. 1990) (agreement awarded portion of gross military retirement pay including post-divorce increases); *Boyett v. Boyett*, 799 S.W.2d 360, 363 (Tex. App.—Houston [14th Dist.] 1990, no writ) (agreement awarded portion of husband's separate property to wife); *Traylor v. Traylor*, 789 S.W.2d 701, 702-03 (Tex. App.—Texarkana 1990, no pet.) (agreement required husband to maintain medical insurance on wife); *see also Francis v. Francis*, 412 S.W.2d 29, 33 (Tex. 1967) (even before family code provided for limited awards of spousal maintenance, parties' contract for spousal support payments did not violate public policy against court-ordered alimony).

## 1. *The USFSPA*

The field of domestic relations is generally a matter of state law, and when Congress passes general legislation, it rarely intends to displace state law in that particular area. *Mansell*, 490 U.S. at 587 (citing *Rose v. Rose*, 481 U.S. 619, 628 (1987) and *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979)). When state family law has come into conflict with a federal statute, the Supreme Court has limited review under the Supremacy Clause to a determination of whether Congress has "positively required by direct enactment" that state law be preempted. *Hisquierdo*, 439 U.S. at 581 (citing *Wetmore v. Markoe*, 196 U.S. 68, 77 (1904)). Before a state law governing domestic relations will be overridden, it must do "major damage" to "clear and substantial" federal interests. *Id.* (quoting *United States v. Yazell*, 382 U.S. 341, 352 (1966)).

Whether federal law preempts state community property laws is a different question from whether the USFSPA preempts the common law doctrine of res judicata. *Trahan v. Trahan*, 894 S.W.2d 113, 117 (Tex. App.—Austin 1995, writ denied), *cert. denied*, 517 U.S. 1155 (1996). In *Mansell*, the Supreme Court addressed the issue of federal preemption of state community property laws, but also observed that it had no jurisdiction to decide whether the doctrine of res judicata applied because that was a matter of state law. 490 U.S. at 586 n.5.

The Texas Supreme Court has rejected collateral attacks on divorce decrees that violated the USFSPA by awarding more than "disposable retired pay." *See, e.g.*, *Baxter v. Ruddle*, 794 S.W.2d 761, 762 (Tex. 1990) (decree awarded portion of *gross* military retirement pay); *Berry*, 786 S.W.2d at 673 (decree awarded portion of *gross* military disability retirement pay); *Cook*, 733 S.W.2d at 140 (decree awarded portion of *gross* military retirement pay). Each case involved a divorce decree that had become final prior to the USFSPA's 1981 effective date.

In *Berry*, the 1980 divorce decree ordered the service member to pay 25% of his *gross* military disability retirement pay to his former wife, which he failed to do. 786 S.W.2d at 673. Pursuant to an agreed order on contempt and enforcement motions, the trial court mandated payment; however, the service member then elected to receive his disability pay from the VA and reduced his payments to his former wife. *Id.* The wife filed a motion to enforce the prior order, but the trial court overruled the motion, and the court of appeals affirmed. *Id.* Even though the Berrys' divorce decree became final before the effective date of the USFSPA, the appellate court held that the USFSPA prevented state courts from treating military retirement pay that had been waived to receive VA disability benefits as property divisible on divorce. *Id.* The court reasoned that retroactive application of the USFSPA was required because *Mansell* permitted modification of a property settlement agreement that had become final. *Id.* The supreme court reversed and remanded the case to the trial court, observing that the *Mansell* decision turned on the California court's determination that it was appropriate under California law to reopen the final settlement order, and that *Mansell* does not require a similar result under Texas law. *Id.* at 673 (citing *Mansell*, 490 U.S. at 586 n.5).[5]

The divorce decree in *Berry* became final before the USFSPA's 1981 effective date, while the Ghrists' decree became final in 1985. Roy argues that *Berry* is distinguishable because the question the supreme court specifically addressed was whether the USFSPA applied retroactively to a divorce decree that was final before the USFSPA's enactment. *See id.* at 672. The language in

---

[5] Because of *Berry*'s procedural posture, the court addressed only the application of res judicata in the context of the USFSPA; it did not address enforcement, section 5301 of Title 38 of the U.S. Code, or *Burson*. *See Berry v. Berry*, 786 S.W.2d 672, 673 (Tex. 1990).

10

*Berry*, however, is broader; the court states that "[b]ecause the final judgment is voidable as opposed to void, the rule of res judicata would apply." *Id.* at 673. In a similar case, the San Antonio court relied on *Berry* to prevent a collateral attack on a 1988 divorce decree. *Jones v. Jones*, 900 S.W.2d 786, 787 (Tex. App.—San Antonio 1995, writ denied); *see also Baker v. Donovan*, 199 S.W.3d 577, 580 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (op. on reh'g) (preventing collateral attack on 1987 decree). In *Jones*, a consent decree provided that the former wife was entitled to 25% of the "monthly *amount* that a retired Major with 20 years service will receive on the date [the service member] begins to receive his retirement." (Emphasis added.) After the divorce, the service member retired, received a 40% disability rating, and elected to receive disability in lieu of a portion of his retirement. *Id.* The trial court entered a judgment enforcing the decree in favor of the former wife. *Id.* The appellate court affirmed the judgment, holding that the retired service member could not collaterally attack the final, unappealed decree. *Id.* at 788. Based on *Berry* and *Jones*, I conclude that federal preemption under the USFSPA does not prevent a state court from enforcing a final, unappealed divorce decree awarding military retirement pay, even when there has been a post-divorce waiver of retirement pay in exchange for VA disability benefits.

### 2. Section 5301(a)

The Texas Supreme Court has also considered the issue of collateral attack in the context of 38 U.S.C. § 5301(a). In *Burson*, the supreme court allowed a collateral attack, but did not explicitly state that the judgment was void. 615 S.W.2d at 194. The court specifically addressed collateral attack, observing that an award of *retirement pay* cannot be collaterally attacked, but distinguishing VA benefits because federal preemption exists:

11

A district court, under our decisions, has the power to enforce a decree ordering a spouse to make payments out of the Air Force disability retirement pay. If there is no appeal from the divorce court's division of property, that decree may not be collaterally attacked.

The important fact which distinguishes this case from those cited above is that Burson, after the divorce decree, made an election to forego his Air Force disability benefits and to receive instead the disability benefits from the Veterans Administration. Veterans Administration benefits, unlike Air Force disability benefits, are not divisible or assignable. They are not property.

Military disability retirement pay and Veterans Administration benefits are established by different statutory schemes. The statutes control the property characterization of each and the fact of, or lack of, federal preemption of each.

*Id.* at 194-95 (citations and footnotes omitted).

The *Burson* case actually involved two judgments—the original divorce decree and the trial court's order enforcing the divorce decree. *Id.* at 193. The divorce decree awarded only a set amount from the service member's "Air Force disability check." *Id.* In the language quoted above, the court recognized that a district court could enforce a decree ordering payments out of Air Force disability retirement pay and that the decree would not be subject to collateral attack. *Id.* at 194. Because the *Burson* decree awarded only Air Force disability, it is clear that the judgment at issue was the trial court's order of enforcement. The supreme court stated that:

Burson argues that the district court cannot order him to pay over to [his former wife] any portion of the Veterans Administration disability benefits because the supremacy clause of the United States Constitution preempts this area from the purview of state courts. We agree. We, therefore, grant the writ of habeas corpus and order Burson discharged.

*Id.* at 193. An enforcement order that expressly requires payment of VA disability benefits, or that

12

impliedly requires payment of such benefits because they are the only income or asset available to satisfy the order, would violate section 5301(a), which states that VA disability benefits "shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 U.S.C. § 5301(a).[6] Such an order would be void because the court had no jurisdiction to enter the judgment, and therefore would be subject to collateral attack. *See Cook*, 733 S.W.2d at 140. This explains why the *Burson* court permitted the collateral attack.

Cases where collateral attacks have been sustained on the theory that the judgment is void because the court lacked jurisdiction to enter the particular judgment involve error that "is quite serious and strikes at the very power of the court to render the judgment." *Austin Indep. Sch.*

---

[6] The legislative history of this provision "recognizes two purposes: to 'avoid the possibility of the Veterans' Administration . . . being placed in the position of a collection agency' and to 'prevent the deprivation and depletion of the means of subsistence of veterans dependent upon these benefits as the main source of their income.'" *Rose v. Rose*, 481 U.S. 619, 630 (1987) (citing S. Rep. No. 94-1243, pp. 147-148 (1976)).

The Supreme Court has held that this statute does not prevent a court from using VA disability benefits to enforce a child support order because the statute's legislative history showed that the benefits "compensate for impaired earning capacity and are intended to 'provide reasonable and adequate compensation for veterans *and their families*.'" *Id.* In *Rose*, however, the court distinguished support obligations such as child support and alimony from divisions of property. *Id.* at 631-32 ("[I]n reaching what was clearly an alternative holding in *Wissner* [*v. Wissner*, 338 U.S. 655 (1950)] that community property division of insurance proceeds would constitute a 'seizure' in violation of a provision against 'attachment, levy, or seizure,' the Court was careful to identify a possible exception for alimony and child support cases. The suggested basis for this exception was that family support obligations are deeply rooted moral responsibilities, while the community property concept is more akin to an amoral business relationship."); *id.* at 632 n.6 ("We construed these amendments to 'expressly override' the anti-attachment provision for support claims, finding it 'logical to conclude that Congress . . . thought that a family's need for support could justify garnishment, even though it deflected other federal benefit programs from their intended goals, but that community property claims, which are not based on need, could not do so.'" (quoting *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 587 (1979))).

13

*Dist. v. Sierra Club*, 495 S.W.2d 878, 882 (Tex. 1973). The mere fact that an action by a court is contrary to a statute, constitutional provision, or rule of civil or appellate procedure makes the judgment only voidable or erroneous, absent one of the "rare circumstances" that makes a judgment void. *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990). Section 5301(a), however, clearly evidences Congress's intent to strike at the very power of a court to render judgment, and therefore an order of enforcement awarding VA disability benefits is one of the rare circumstances where a particular judgment is void. Thus, as the supreme court in *Burson* recognized, section 5301(a) acts as a limit on a court's power to enforce even a final, unappealed divorce decree.

The Ghrists' situation is similar to that in *Burson*. As in *Burson*, the parties' divorce decree was enforceable when entered into, became final, and was not appealed. Also, as in *Burson*, there was a post-divorce waiver of military retirement pay in exchange for VA disability pay and an attempt to enforce the original decree. At this point, however, the two cases take divergent paths. In *Burson*, the trial court attempted to enforce the original decree by requiring the former service member to make payments from his VA disability pay. It was this method of enforcement that the supreme court held invalid. In this case, however, the trial court has not attempted to enforce the decree. As discussed below, the Ghrists' divorce decree, depending on its interpretation, may or may not necessitate an impermissible enforcement order. Without additional proceedings in the trial court, it is premature to conclude the Ghrists' decree is unenforceable.

In summary, under both the USFSPA and 38 U.S.C. § 5301(a), a court may enforce a final, unappealed divorce decree awarding military retirement pay even though there has been a waiver of retirement pay to receive VA disability benefits. However, the court's power to enforce

14

the decree is limited by section 5301(a), and the court therefore may not expressly or impliedly require the payment of VA disability benefits.[7] Having made this determination, the next step is to consider whether the Ghrists' divorce decree is capable of enforcement as written.

---

[7] In *Baker v. Donovan*, the Houston court of appeals did not discuss section 5301; however, the enforcement order it upheld did not require the service member to pay any portion of his VA disability benefits. 199 S.W.3d 577 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (op. on reh'g). After the parties' divorce, the service member retired and began receiving $5000 per month, which included $1069 designated as VA disability pay. *Id.* at 578. On the former spouse's petition for enforcement and clarification of the parties' agreed divorce decree, the trial court ordered that the service member pay his former spouse $387.87 each month *from his disposable military retirement pay*. *Id.* at 578-79. On appeal, the service member argued that the trial court erred because it failed to take into account his VA disability pay and, thus, failed to reduce the retirement pay by the amount of disability. *Id.* at 579. The court disagreed, holding that the decree could not be collaterally attacked and that any modification of the decree could only be considered upon the timely filing of a motion to modify. *Id.* at 580.

Similarly, courts from other states have upheld final, unappealed divorce decrees agreed to by the parties where the agreements could be enforced without reference to VA disability benefits. *See, e.g.*, *Danielson v. Evans*, 36 P.3d 749, 760-61 (Ariz. Ct. App. 2006) (contempt order enforcing agreed divorce decree did not violate federal law where court order did not require payment from VA disability pay and former service member failed to show that VA pay was his only source for making such payment); *Abernethy v. Fishkin*, 699 So. 2d 235, 240 (Fla. 1997) ("[W]hile federal law prohibits the division of disability benefits, it does not prohibit spouses from entering into a property settlement agreement that awards the non-military spouse a set portion of the military spouse's retirement pay. Nor does it preclude indemnification provisions ensuring such payments, so long as veterans' disability benefits are not the source of such payments."); *In re Marriage of Nielsen*, 792 N.E.2d 844, 849 (Ill. App. Ct. 2003) (trial court impermissibly enforced divorce decree by requiring payment from disability benefits; cause was remanded to determine if former service member was free to satisfy his obligation with assets other than his disability benefits); *Scheidel v. Scheidel*, 4 P.3d 670, 674 (N.M. Ct. App. 2000) ("[F]ederal law does not prohibit state courts from enforcing indemnity provisions which ensure the payment of a minimum sum to a non-military spouse as his or her share of a community pension, provided that veterans' disability benefits are not specified as the source of such payments.").

15

*Interpretation and enforcement of the divorce decree*

The Ghrists dispute the proper interpretation of their divorce decree. A marital property settlement agreement that is incorporated into a final divorce decree is treated as a contract, and its legal force and meaning are governed by the law of contracts. *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984). In construing a contract, the primary concern of the court is to ascertain and give effect to the true intention of the parties as they expressed that intent in the instrument. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the parties entered the contract. *Coker*, 650 S.W.2d at 394. Contract language is accorded its plain, grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex. 1985). If the written instrument's language can be given a certain or definite legal meaning or interpretation, then it is not ambiguous. *Buys v. Buys*, 924 S.W.2d 369, 372 (Tex. 1996) (citing *Coker*, 650 S.W.2d at 393). A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393.

The plain language of the Ghrists' agreed divorce decree does not explicitly award a portion of VA disability benefits. Instead, the agreement addresses the division of Roy's "retirement benefit."[8] It awards Mary 50% of the retirement benefit and further provides that "[a]ny

---

[8] Roy argues that the agreement's use of the term "disposable" twice in discussing retirement indicates that Mary's award was limited to "disposable retired pay" as defined in the USFSPA, which omits amounts waived in order to receive VA disability benefits. *See* 10 U.S.C. § 1408(a)(4).

election of benefits" by Roy "shall not reduce the *amount* or percentage of the retirement awarded" to Mary. (Emphasis added.)

The first inquiry is whether the phrase "election of benefits" has a plain, grammatical meaning that is unambiguous and, if so, whether that meaning encompasses Roy's waiver of part of his military retirement pay. VA disability payments are commonly referred to as benefits. *See, e.g.*, 38 U.S.C. § 5301; *Mansell*, 490 U.S. at 583. Title 38 of the U.S. Code, which addresses such payments, is titled "Veterans' Benefits." An "election" is defined as "[t]he exercise of choice; esp., the act of choosing from several possible rights or remedies in a way that precludes the use of other rights or remedies." Black's Law Dictionary 536 (7th ed. 1999). Because it was determined that Roy was disabled, he had the option of waiving retirement pay to receive VA disability pay, and he chose to exercise that option. *Burson* also characterizes this choice as an election. 615 S.W.2d at 196 ("[F]ederal law empowered Burson to make an election."). Thus, the phrase "election of benefits" has a plain, grammatical meaning and includes Roy's waiver of retirement pay to receive VA disability benefits. This interpretation is reinforced by looking at the circumstances present when the parties entered the contract, *see Coker*, 650 S.W.2d at 394, namely that during the marriage Roy had initially waived retirement pay to receive VA disability benefits, making it likely that both parties were aware of the possibility and effect of such an option. It is clear therefore that the plain language of the decree encompassed a potential future waiver of VA benefits by Roy.

---

The agreement, however, does not explicitly adopt the statutory definition. Furthermore, in awarding Mary 50% of the "present disposable and future military retirement," the agreement states that "said amount" is computed by "deducting from [Roy's] 'gross', withholding only, to reach his 'net'." The inclusion of this provision is inconsistent with an intent to adopt the statutory definition.

What is unclear, however, is what the parties contemplated would be the effect of a waiver of retirement pay. The decree states that any election of benefits "shall not reduce the amount or percentage of the retirement awarded." At the hearing on the motion to enter and the motion to reconsider, there was no testimony addressing the parties' intent as to that provision. The language can be interpreted as allowing Roy to make certain elections of benefits, but not any election that would reduce the amount of retirement. If interpreted in this way, even though included in a final, unappealed judgment, such a provision could not be enforced because it requires a court to prevent Roy from "doing that which the federal law properly gave him a right to do." *See Burson*, 615 S.W.2d at 196. However, the language also can be interpreted as a voluntary commitment by Roy to provide a continuous stream of income to Mary by allowing for alternative payments if his retirement benefits are reduced by his election. If this is what the parties intended, then a court could enforce their agreement to the extent income or assets exist apart from VA disability benefits to satisfy the judgment. Without testimony regarding the parties' intent, the decree could be subject to either of these interpretations and perhaps others. Because the decree is reasonably susceptible to more than one meaning, it is ambiguous. *See Coker*, 650 S.W.2d at 393.

A court may render further orders to enforce the division of property made in a divorce decree to assist in the implementation of or to clarify the prior order; however, the court may not amend, modify, alter or change the division of property made in the divorce decree. Tex. Fam. Code Ann. §§ 9.006(a), .007(a) (West 2006). In Mary's petition for enforcement, she requested that, "if the Court finds that any part of the order sought to be enforced is not specific enough to be enforced by contempt, the Court enter a clarifying order restating the terms of the order, decree, or judgment in a manner specific enough to allow enforcement by contempt." Because the

18

Ghrists' agreed divorce decree is ambiguous, the trial court must ascertain the parties' intent before it may determine the extent to which the award of retirement benefits is enforceable.[9]

## CONCLUSION

The parties' divorce decree is ambiguous and subject to both enforceable and unenforceable interpretations. As such, it is premature to conclude that enforcement of the decree would require an impermissible order. Because the trial court determined that as a matter of law it could not enforce the Ghrists' divorce decree, the court did not ascertain the parties' intent regarding the effect of the "election of benefits" provision in the decree. I would therefore reverse the trial court's order and remand this case to the trial court to make such a finding. I respectfully dissent.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Filed: July 12, 2007

_____

[9] A Houston court of appeals has held that, when the parties did not address VA disability benefits in the decree, it would be an impermissible modification of the original decree for the court to take the benefits into account during a clarification. *Baker v. Donovan*, 199 S.W.3d 577, 580 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (op. on reh'g).

19