# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-10-00774-CV

---

**Amir Yasin, Appellant**

**v.**

**Lucy Yasin, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
NO. D-1-FM-09-004059, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Amir Yasin appeals from the final decree in his divorce proceeding from Appellee Lucy Yasin.[1] The appellant challenges the portions of the decree omitting a geographic restriction on his ex-wife's exclusive right to determine the primary residence of the parties' children and awarding her spousal maintenance. Because we hold that there is no error in the divorce decree, we affirm the trial court's judgment.

## BACKGROUND

The parties were married in March 1996. Amir has a bachelor's degree in computer science and is a software engineer. Lucy has an associate's degree in fashion merchandising but has had a limited employment history since graduating in 1995. Amir and Lucy have two minor

---

[1] We will refer to the parties by their first name to avoid confusion.

children: a daughter, I.Y., born in September 1996 and another daughter, S.Y., born in February 1998. In early July 2009, Amir moved out of the marital home and later that month filed for divorce.

Lucy has stayed at home since the birth of I.Y. and is the primary caregiver to the children. S.Y. is diagnosed with autism and requires substantial care and supervision; she has few verbal skills and is not yet potty trained. Though S.Y. was twelve years old at the time of the divorce, the parties testified that she has the capacity of a three year old. The parties agree that it is unlikely that S.Y. will ever be able to live independently.

On March 29, 2010, shortly before beginning the bench trial on the merits, the parties announced that they had reached an agreement on several disputed issues concerning property distribution and custody of the children. Their agreement, which was read into the record, included that both parties would be designated joint managing conservators and that Lucy would have the exclusive right to designate the primary residence of the children. They also agreed that Lucy's right to designate the primary residence of the children would be subject to a geographic restriction, i.e., that the children's residency would be limited to Travis County and the contiguous counties thereto.

Also prior to the start of trial, Amir objected to Lucy's request for spousal maintenance. More than a month before trial the parties had filed pre-trial documents entitled "proposed disposition of issues." Amir explained that Lucy's proposed disposition of issues indicated that she was seeking spousal maintenance. Amir argued that because the spousal maintenance claim did not appear in Lucy's pleading, he did not have fair notice of this claim. The trial court overruled Amir's objection.

During trial, the primary issues left for the trial court's consideration were the award of the couple's marital home, child support, and spousal maintenance. Amir and Lucy were the only witnesses. The testimony presented largely concerned the relative expenses and financial resources of the parties, as well as Amir's alleged waste of a marital asset, a bank account in the name of Amir's consulting business.[2] When examined about her request for spousal maintenance, Lucy testified about her efforts to obtain employment and the obstacles she faced in finding suitable, affordable childcare. She also testified that she preferred to stay in the marital home and that she could afford to do so if she were awarded spousal maintenance. The trial court directly examined her further on the issue as follows:

| | |
|---|---|
| THE COURT: | Are you asking—by your statement, I'm not quite clear. Are you asking to move up north to live, or would you prefer to stay here in Austin? |
| LUCY: | If we can stay in that house, that's beneficial for the girls. But I have no family to help me. |
| THE COURT: | Okay. |
| . . . | |
| LUCY: | The comment is, sir, that if I had family here, then I would be able to leave [S.Y.] and get a job, because I would have responsible people there that knew her and loved her and would take care of her while I was working. |
| . . . | |
| THE COURT: | Okay. So is it your preference—do you feel that you could get a job up north and work? |

_____

[2] Amir testified that in January 2009 the bank account held approximately $100,000. At the time of trial, less than $2,000 remained in the account.

3

LUCY:              If I needed to, yes.

. . .

THE COURT:         Are you saying that you want to stay in the Austin area, in
                   Travis and the contiguous counties, or are you saying that you
                   want to go up north?

LUCY:              Myself, one place is very much like another.  As far as my
                   children are concerned they want to stay here.  Everything
                   they know is here.

THE COURT:         Okay.

LUCY:              But if I cannot be employed, I would like to be released to go
                   up there [to Iowa] and find a job, because then I wouldn't
                   have to pay someone to take care of my children.  I would
                   have family to help me.

At the conclusion of the trial, the trial court announced that it was granting the divorce and was adopting the parties' agreement, including the geographic restriction on residency. The trial court also ordered Amir to pay child support in the amount of $1,400 per month and spousal maintenance in the amount of $1,300 a month for three years. The trial court set a hearing on entry of the orders for April 28, 2010.

Approximately one week following the conclusion of the trial on the merits, the trial court notified the parties that, upon further review, the court had decided that the geographic restriction on residency would be removed from the final divorce decree. Amir objected in writing to this decision. Accordingly, on July 2, 2010, the trial court held an evidentiary hearing to reconsider its prior ruling regarding the geographic restriction. At the conclusion of the hearing, the trial court announced that it was not changing its decision to grant Lucy the exclusive right to

4

designate the primary residence of the children without geographical restriction and signed the final divorce decree to that effect. Upon Amir's request, the trial court issued findings of fact and conclusions of law. Amir now appeals the final decree of divorce.

## STANDARD OF REVIEW

We review Amir's complaints under an abuse-of-discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) (best interest of the child); *In re J.R.D.*, 169 S.W.3d 740, 742-43 (Tex. App.—Austin 2005, pet. denied) (child conservatorship and possession); *Pickens v. Pickens*, 62 S.W.3d 212, 214 (Tex. App.—Dallas 2001, pet. denied) (spousal maintenance). A trial court abuses its discretion when its decision is arbitrary, unreasonable, and without reference to any guiding rules or principles. *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).

In a bench trial, where the trial court makes findings of fact, as it did in this case, those findings of fact are the equivalent of jury answers to special issues. *Id*. at 477; *Lindsey v. Lindsey*, 965 S.W.2d 589, 591 (Tex. App.—El Paso 1998, no pet.). Those findings define and limit the issues on which the judgment may be reviewed. *See* Tex. R. Civ. P. 299. However, any finding of fact omitted by the trial court may be presumed, when supported by the evidence, so long as one or more elements in support of the fact have been found by the trial court. *Id*. As long as some evidence of a substantive and probative character exists to support the trial court's decision, we will not substitute our judgment for that of the trial court. *Echols*, 85 S.W.3d at 477; *see also In re C.C.J.*, 244 S.W.3d 911, 917 (Tex. App.— Dallas 2008, no pet.).

5

**DISCUSSION**

**Geographic Restriction**

Once a trial court appoints joint managing conservators and designates the parent who has the exclusive right to determine the primary residence of the child, it then has the discretion to either establish a geographic area in which the child may reside or specify that there are no geographic restrictions. *See* Tex. Fam. Code Ann. § 153.134(b)(1) (West 2008). In his first point of error, Amir argues that the trial court abused its discretion by failing to impose any geographic restriction on Lucy's right to determine the children's residency. Specifically, Amir argues that the trial court abused its discretion by rejecting the parties' agreement on this issue, especially given the overwhelming weight of the evidence supporting the imposition of a geographic restriction.

The Legislature has explicitly stated that, "the best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *Id.* §153.002 (West 2008); *Lenz v. Lenz*, 79 S.W.3d 10, 24 (Tex. 2002). The trial court has wide latitude to determine what is in the best interest of a child. *Gillespie*, 644 S.W.2d at 451. However, the family code is silent as to the specific factors the trial court should consider when determining whether a geographic restriction on residency is in the best interest of a child.

In *Lenz v. Lenz*, the Texas Supreme Court provided a variety of factors relevant to the determination of whether a geographic restriction is in the best interest of the child, including: (1) the reasons for and against the move, including the parents' good faith motives in requesting or opposing it; (2) health, education, and leisure opportunities afforded by the move; (3) the degree of

6

economic, emotional, and educational enhancement for the custodial parent and child; (4) the effect on extended family relationships; (5) accommodation of the child's special needs or talents; (6) the effect on visitation and communication with the non-custodial parent to maintain a full and continuous relationship with the child; (7) the possibility of a visitation schedule allowing the continuation of a meaningful relationship between the non-custodial parent and child; and (8) the ability of the non-custodial parent to relocate.[3]  79 S.W.3d at 15-16.  In doing so, the supreme court recognized that cases such as these are intensely fact-driven and therefore involve the balancing of these numerous factors, as opposed to formulaic tests.[4]  *Id.*

---

[3] Although *Lenz* involved a modification proceeding, the factors are also applicable in an appeal of a trial court's decision regarding geographic restriction in a divorce decree. *Lenz v. Lenz*, 79 S.W.3d 10, 11 (Tex. 2002);  *Morgan v. Morgan*, 254 S.W.3d 458, 488 (Tex. App.—Beaumont 2008, no pet.).

[4]  In arguing that the evidence does not support the trial court's refusal to impose a geographic restriction, Appellant also cites to a list of factors recognized by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).  These include:  (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger of the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.  *Id*. (citations omitted).  In *Holley*, a parental-termination case, the court recognized that these factors, while not exhaustive, have been considered by Texas courts in determining the best interest of the child.  *Id*.  More than fifteen years later, the court in *Lenz* specifically discussed factors relevant to the determination of best interest of the child in the context of geographic restrictions without any reference to the factors presented in *Holley*.  *Lenz v. Lenz*, 79 S.W.3d 10, 15-17 (Tex. 2002).  Because geographic restriction is the sole conservatorship issue presented in this case, we do not separately address the factors presented in *Holley*.  *But see In re K.L.W.*, 301 S.W.3d 423 (Tex. App.—Dallas 2009, no pet.) (analyzing geographic restrictions under the factors presented in both *Lenz* and *Holley*).

With these factors in mind, we turn to our review of the sufficiency of the evidence supporting the trial court's decision to omit a geographic restriction from the final divorce decree. The trial court made the following relevant findings of fact:

1. The parties were married on or about March 1, 1996.

2. Petitioner, Amir Yasin, in 1997 graduated from Oklahoma City University with a bachelor's degree in computer science. He is a senior software engineer.

3. Respondent, Lucy Yasin, graduated in 1995 from Rose State College with an associate[']s degree.

4. . . . .Since September 20, 1996, Lucy Yasin stayed home with the children and was their primary care giver.

5. [S.Y.] is diagnosed with autism and requires substantial care and personal supervision because of her mental or physical disability and will not be capable of self-support. . . .

6. On September 11, 2009, [Amir]'s monthly gross wages were $9,750 as supported by his proposed support decision and information. [Lucy]'s monthly gross wages were zero. [Amir] also has a consultant business and of the two parties has the capacity to earn more income.

7. On February 1, 2010, [Amir]'s monthly gross wages were $7,000 as supported by his proposed support decision and information. [Lucy]'s monthly gross wages were zero.

8. The basis of the divorce was insupportability of the parties' marital relationship[.] [Amir] was supporting his girlfriend and her son.

The trial court heard evidence that Lucy has been the primary caregiver to S.Y. since her birth. For more than twelve years Lucy has tended to S.Y.'s special needs on a daily basis, including dressing, bathing, grooming, and feeding her. Lucy testified that the cost of child care, especially

8

for S.Y., would be close to, or even exceed, the amount of money she could expect to earn when employed. According to Lucy, child care for S.Y. would cost a minimum of $10 per hour. At the time of the hearing to reconsider the geographic restriction, Lucy was training to become a security guard paying $11 per hour.

The trial court also heard evidence that Lucy's motive for needing to be able to move was to live near family that could help with the children. Lucy testified that she preferred to remain in the marital home located in the Austin area, but that she needed to have the ability to move if she could not find reasonable employment or suitable childcare. Lucy testified that she has extended family in Iowa and that their help with the children would enable her to work. She stated that she had researched suitable schools in the area near her family and was satisfied that they were good schools. She testified that she was not convinced that Amir would help with the children when she could not find care, and that there had been instances since the temporary-orders hearing that he had not fully exercised his visitation rights.[5]

Conversely, Amir presented evidence regarding the close relationship he has with his children. Both he and Lucy testified that the children love their father. Amir testified that he believes a move would have a negative impact on his children. He recalled a specific instance when S.Y. overhead Lucy talking about moving to Iowa and "became extremely agitated." He also testified that it would be extremely difficult for him to relocate his career to Iowa. Amir further

---

[5] The temporary orders entered in this case on October 1, 2009, prohibited Amir's girlfriend from being around the children. At the reconsideration hearing, both parties testified that for the seven months following the entry of the temporary orders Amir had declined to exercise his right to have the children stay with him overnight. Amir admitted that one of the factors for not having the children stay overnight was that his girlfriend had moved in with him.

testified that he would only be able to see them a few times a year if they lived in Iowa, and that if they stayed in the Austin area he would be available to care for the children when needed.

The trial court, as the fact finder in this case, is in the best position to judge the credibility of the witnesses and the weight to be given their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *see also Echols*, 85 S.W.3d at 477 ("The trial court is in the best position to observe the demeanor and personalities of the witness and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record."). Based on the evidence presented at trial and the reconsideration hearing, the trial court's findings of fact are supported by sufficient evidence. In addition, the trial court could have reasonably concluded that permitting Lucy to relocate without geographic restriction was in the best interest of the children. Accordingly, the parties' announced agreement is unenforceable to the extent it would impose a geographic limitation on Lucy's ability to relocate the children.[6] *See Garcia-Udall v. Udall*, 141 S.W.3d 323, 331 (Tex. App.—Dallas 2004, no pet.) ("An agreement on conservatorship issues that is not in the child's best interest violates public policy and is unenforceable."); *see also Leonard v. Lane*, 821 S.W.2d 275, 360 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ("The court has the right to act in the best interest of the child, notwithstanding any agreement of the parties.").

Further, the trial court could have reasonably concluded, based on Lucy's testimony, that she withdrew her consent to the imposition of a geographic restriction prior to the trial court's

---

[6] This was not a mediated settlement agreement under either section 6.602 or section 153.0071 of the family code. *See* Tex. Fam. Code Ann. §§ 6.602 (West 2006), 153.0071 (West 2008). A trial court is not authorized to substitute its judgment for the mediated settlement agreements entered by the parties unless the requirements of subsection 153.0071(e-1) are met. *In re Marriage of Joyner*, 196 S.W.3d 883, 889 (Tex. App.—Texarkana 2006, pet. denied).

10

rendering of judgment. *See Padilla v. LaFrance*, 907 S.W.2d 454, 46-62 (Tex. 1995) (noting that a trial court cannot render a valid agreed judgment absent consent at the time judgment is rendered). The trial court did not abuse its discretion in refusing to enter judgment on the parties' agreement requiring a geographic restriction on Lucy's right to determine the residency of the children. We overrule Amir's first point of error.

## Spousal maintenance

In his second and third points of error, Amir contends that the trial court abused its discretion in awarding spousal maintenance. Specifically, Amir maintains that he did not have fair notice of Lucy's claim for spousal maintenance. In addition, Amir contends that the evidence does not support the trial court's award of spousal maintenance because he testified that he was unemployed at the time of the divorce.

### *Fair notice*

Amir contends that he did not have fair notice of Lucy's claim for spousal maintenance because Lucy had not specifically pleaded it at the time of trial. Generally, a judgment of a court must be supported by the pleadings; that is, the pleadings must give fair notice to the opposing party of the basic issues of the controversy and what testimony will be relevant. Tex. R. Civ. P. 301; *Horizon CMS Heathcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000). At the time of trial, Lucy's live pleading was an answer and general denial, which included a prayer for general relief. Lucy's answer and general denial did not expressly mention spousal maintenance. However, Texas courts have traditionally maintained liberal pleading requirements in family law cases.

11

*See Jensen v. Jensen*, 665 S.W.2d 107 (Tex. 1984) (remanding cause to trial court to determine reimbursement even though claim for reimbursement was not pleaded); *see also Cohen v. Cohen*, 194 S.W.2d 273, 275 (Tex. Civ. App.—Austin 1946, no writ) ("The general rule as to sufficiency of pleadings and quantum of proof applicable to civil cases generally does not apply to divorce cases in this state."). Accordingly, the failure to counter-petition and specifically plead a claim for spousal maintenance is not necessarily fatal to recovery. *See Jensen*, 665 S.W.2d at 10; *see also Reimert v. Reimert*, No. 09-07-418-CV, 2008 Tex. App. LEXIS 8549, at *8-9 (Tex. App.—Beaumont Nov. 13, 2008, no pet.) (mem. op.) (holding that prayer for general relief would support a claim for economic contribution).

Here, the record shows that the trial court issued temporary orders awarding Lucy temporary spousal maintenance in the amount of $2,500 per month. In addition, more than one month before trial, the parties filed their proposed disposition of issues, as required by the Travis County Civil District Courts' standing order and local procedures for family law. Lucy's proposed disposition of issues requests an award of spousal maintenance for thirty-six months following the entry of the divorce. We find that Lucy's pleadings, together with her proposed disposition of issues, provided Amir with "fair notice" sufficient to support her claim for spousal maintenance.

*Sufficiency of the evidence*

Amir also argues that Lucy's award of spousal maintenance is not supported by the evidence. The purpose of spousal maintenance is to provide temporary and rehabilitative support for a spouse whose ability to support him or herself has eroded over time while engaged in

12

homemaking activities and whose capital assets are insufficient to provide support. *O'Carolan v. Hopper*, 71 S.W.3d 529, 533 (Tex. App.—Austin 2002, no pet.). A trial court may award spousal maintenance only if the party seeking maintenance meets the statutory eligibility requirements under Section 8.051 of the Texas Family Code. In a marriage lasting ten years or longer, a spouse is eligible to receive spousal maintenance if she lacks sufficient property to meet her minimum reasonable needs, and is the custodian of a child who requires substantial care and personal supervision because a physical or mental disability makes it necessary, taking into consideration the needs of the child, that the spouse not be employed outside the home. Tex. Fam. Code Ann. § 8.051 (West 2006). Amir does not contend that Lucy is ineligible under section 8.051 to receive spousal maintenance. Rather, Amir disputes the amount of support awarded.

Once the trial court determines that the spouse seeking maintenance is eligible, the trial court must determine the nature, amount, duration, and manner of periodic payments by considering all relevant factors. *Id*. § 8.052 (West 2006). These factors include: the financial resources of the spouses; the education and employment skills of the spouses; the time required for the spouse seeking maintenance to acquire sufficient education or training; the age, employment history, earning ability, and physical and emotional condition of the spouse seeking maintenance; the duration of the marriage, acts of either spouse resulting in depreciation of the marital estate; a spouse's contribution to the education, training, or increased earning of the other; the contribution of the spouse as homemaker; and any marital misconduct of the spouse seeking maintenance. *Id*. § 8.052(1)-(4), (6)-(12). In addition, the court should consider the ability of the spouse from whom maintenance is requested to meet that spouse's personal needs and to provide periodic child support

13

payments, if applicable, while meeting the personal needs of the spouse seeking maintenance. *Id*. § 8.052(5).

Amir contends that the trial court abused its discretion because the undisputed evidence shows that at the time of the trial he was unemployed and the amount of the support ordered would have left him without the ability to meet his personal needs. Amir testified at trial that he was currently unemployed and that his only income for the past three to four months leading up to the trial had been unemployment compensation in the amount of $430 per week. However, Amir also testified that in the last nine months leading up to his unemployment, he had been employed as a computer scientist earning $117,000 per year. Prior to that employment, Amir owned and ran his own consulting business for more than five years. Tax records show that Amir reported personal income from his consulting business in 2007 and 2008 in the amount of $83,951 and $81,274 per year, respectively. At the reconsideration hearing, Amir testified that he was no longer looking for employment, rather his consulting business had increased and he was optimistic that it would be "within about 10 percent of where [he] was before [he] closed it down in 2008." He testified, "I'm pretty happy with the—within 10 percent. If I can do that, then I think I can make [a] go of the business again." Lastly, Amir's proposed support decision and information, filed before trial and made an exhibit at trial, stated that he expected to earn roughly $7,000 a month in the future.

In this case, the trial court found that Lucy stayed home during the marriage to care for the couple's children and that her monthly gross wages are zero. Meanwhile, the court found that Amir is a senior software engineer, and as of September 2009 his monthly gross wages were $9,750,

14

and as of February 2010 his monthly gross wages were $7,000. The trial court concluded that Amir also has a consulting business and, of the two parties, has the capacity to earn more income. It also concluded that at the time of the divorce, Amir was supporting his girlfriend and her son. These findings are consistent with the evidence presented at trial and are relevant to the determination of spousal maintenance.

The determination of spousal maintenance is not made by way of a simple mathematical equation or a checklist of the factors enumerated in section 8.052, but a specific determination that should be made by the trial court on a case-by-case basis. *Amos v. Amos*, 79 S.W.3d 747, 749 (Tex. App.—Corpus Christi 2002, no pet.). Though one factor, standing alone, may weigh in favor of less spousal maintenance, it does not necessarily follow that the trial court abused its discretion. *See Limbaugh v. Limbaugh*, 71 S.W.3d 1, 12-13 (Tex. App.—Waco 2002, no pet.) (noting that section 8.052 is "non-exhaustive list of factors the court may consider" in determining spousal maintenance). Because there is substantive and probative evidence to support the trial court's decision, the trial court did not abuse its discretion in its award of spousal maintenance. *See Alaghehband v. Abolaghaei*, No. 03-02-00445-CV, 2003 Tex. App. LEXIS 3701, at *12 (Tex. App.—Austin May 1, 2003, no pet.) (mem. op.) (reviewing factors and upholding spousal maintenance award where there was "some substantive evidence" supporting the decision).

Alternatively, Amir contends that the court abused its discretion in awarding any spousal maintenance in excess of statutory limits. Section 8.055 of the Texas Family Code provides that a court may not order monthly maintenance that is more than the lesser of $2,500 or twenty percent of the spouse's *average* monthly gross income. Tex. Fam. Code Ann. § 8.055 (West 2006)

15

(emphasis added). Amir testified at trial that he was currently unemployed and that his only income for the past three to four months leading up to the trial had been unemployment compensation in the amount of $430 per week. Thus, Amir contends that the trial court abused its discretion in awarding any maintenance in excess of $372.66 per month.

As previously discussed, the trial court properly found that as of September 2009, Amir's monthly gross wages were $9,750, and that as of February 2010, Amir's monthly gross wages were $7,000. The trial court did not make any express finding as to Amir's *average* monthly gross wages. However, based on the trial court's award of spousal maintenance of $1,300 per month, we can presume that the trial court found Amir's average monthly wages were at least $5,200 per month. *See* Tex. R. Civ. P. 299. This presumed finding is supported by the evidence. Accordingly, the trial court did not abuse its discretion in awarding spousal maintenance in the amount of $1,300 per month. Amir's second and third points of error are overruled.

## CONCLUSION

Because we hold that the trial court did not abuse its discretion in refusing to impose a geographic restriction or in awarding spousal maintenance, we affirm the final decree of divorce.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed: October 21, 2011

16